J-A35043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.T. a minor, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.T., | : | No. 1076 WDA 2015 |

Appeal from the Order June 16, 2015
in the Court of Common Pleas of Lawrence County,
Civil Division, No. 30 of 2015 D.P.

BEFORE: BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JANUARY 06, 2016**

K.T. ("Father") appeals from the Order adjudicating C.T. (born 2/10/01) (hereinafter "Child") dependent and placing Child in foster care.[1] We affirm.

The trial court set forth the relevant factual and procedural background in its Opinion, which we adopt for purposes of this appeal. **See** Trial Court Opinion, 8/5/15, at 3-8.[2]

Father filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(a)(2)(i) Concise Statement of Errors Complained of on Appeal.

On appeal, Father raises the following issues for our review:

---

[1] Child's mother, H.T. ("Mother"), is not a party to this appeal.

[2] A more thorough and extensive factual and procedural history of this case can be found in the trial court's February 27, 2015 Opinion, addressing the basis for its Custody Order. **See** Trial Court Opinion, 2/27/15, at 2-62. We also note that this Court affirmed the trial court's February 27, 2015 Custody Order. **See K.T. v. H.T.**, 454 WDA 2015 (Pa. Super. 2015) (unpublished memorandum).

     I.      Whether the trial court committed an error of law adjudicating [C]hild dependent under 42 Pa.C.S.[A.] § 6301(1)[,] and removing him from the home[,] when there was a ready, willing and able parent?

     II.     Whether the trial court committed an error of law in finding that Lawrence County Children and Youth Services ["LCCYS"] proved by clear and convincing evidence that [C]hild was dependent under 42 Pa.C.S.[A.] § 6302(6)[,] by finding that [C]hild was ungovernable by Father?

     III.    Whether the trial court committed an error of law in relying on findings [it made] in the concurrent custody proceeding [during its adjudication of] the dependency matter[,] when a different evidentiary standard applied?

     IV.    Whether the trial court [erred] in finding that it was in the best interest of [C]hild to be removed from the home of Father where [C]hild was thriving; by finding that permitting [C]hild to remain in the home of Father would be contrary to [C]hild's welfare when no effort was made to investigate the appropriateness of kinship placement; when the court determined that foster care was the least restrictive placement and by punishing [C]hild for refusing to live with Mother by first placing [C]hild in a juvenile detention center and then by placing [C]hild in distant foster care?

     V.     Whether the trial court committed an error in finding that a bonding assessment, trauma evaluation and therapy were necessary to achieve the permanency plan of "return to parent or guardian[,]" when there were no reasonable efforts made by [LCCYS,] and nothing in the plan for Father to complete to remediate the need for placement?

     VI.    Whether the trial [judge] committed an error by refusing to recuse [him]self from the dependency matter when the February 27, 2015 custody [O]rder pre-determined the dependency matter, as the trial court prohibited LCCYS or any agency or law enforcement agency from returning [C]hild to Father?

Father's Brief at 8-9 (issues renumbered for ease of disposition).

As Father's first two issues pertain to the trial court's adjudication of Child as dependent, we will address them together. In his first issue, Father contends that LCCYS failed to establish by clear and convincing evidence that Father lacks care, custody and control of Child. *Id*. at 18. Father claims that prior to the dependency hearing, while in Father's care, Child was a straight "A" student, had friends, was involved in student government, attended boy scouts, regularly attended church, and was "thriving." *Id*. at 19. Father contends that Child only experienced difficulty in his relationship with Mother, and that during the fifteen months prior to Child's entry into the juvenile system, Mother made no attempt to communicate with Child. *Id*. at 19-20.

Father argues that, in adjudicating Child dependent, the trial court erred by using its prior finding, made in the custody proceedings, that Father would promote the continued alienation of Child from Mother. *Id*. at 20. Father asserts that, by including in the Custody Order the provision that Child was not to be returned to Father if Child ran away from Mother during her custodial periods, the trial court effectively adjudicated Child as dependent without the safeguards provided in the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375. Father's Brief at 22.

In his second issue, Father contends that Child is not "ungovernable." *Id*. at 23. Father asserts that the trial court erred by requiring that Child obey the Custody Order because only Father and Mother, and not Child, are

parties to the Custody Order. *Id*. at 24. Father claims that the trial court impermissibly shifted the burden of compliance with the Custody Order to Child, and thereafter used Child's non-compliance as an improper justification for determining that Child is dependent. *Id*.

Father also argues that Child does not meet the definition of a "dependent" child under 42 Pa.C.S.A. § 6302(6). Father's Brief at 25. Father contends that, to be "dependent" under section 6302(6), Child must disobey the lawful commands of his parents and be ungovernable and in need of care, treatment or supervision. *Id*. Father asserts that Child does not meet this standard because there is no evidence that (1) Mother has made any reasonable attempts to control Child; or (2) that Child is in need of care, treatment or supervision. *Id*. at 26. Father claims that, because Mother could not persuade Child to come with her in the custody case, she is using the dependency proceedings to accomplish her goal of keeping Child away from Father. *Id*. Father argues that the trial court's concern regarding the adverse effect on Child from his parents' constant custody litigation is not a basis for a dependency finding. *Id*. at 27. Father contends that the trial court is improperly using the dependency proceedings to punish Child and Father. *Id*.

> The standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the

parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re B.B.*, 745 A.2d 620, 622 (Pa. Super. 1999) (citations omitted). We review a trial court's adjudication of dependency for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Dependency proceedings are governed by the Juvenile Act. The Juvenile Act, in furtherance of its goal of preserving family unity whenever possible, requires clear and convincing evidence of dependency before the trial court can intervene in the relationship between a parent and child. *In re R.R.*, 686 A.2d 1316, 1317 (Pa. Super. 1996); *see also* 42 Pa.C.S.A. § 6301(b). Clear and convincing evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear determination, without hesitancy, of the truth of the precise facts at issue." *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013).

The Juvenile Act does not necessarily require proof that a parent is "unfit" before a child can be adjudicated dependent. Indeed, pursuant to the Juvenile Act, a "dependent child" includes a child who "has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in need of care, treatment or supervision." 42 Pa.C.S.A. § 6302(6). Thus, pursuant to section 6302, a child may be adjudged dependent regardless of parental fitness.

In its Opinion, the trial court addressed Father's first two issues, set forth the relevant law, and determined that they lack merit. **See** Trial Court Opinion, 8/5/15, at 10-14. Based on the sound reasoning of the trial court, we conclude that Child's dependency under section 6302(6) was established by clear and convincing evidence, and affirm on this basis as to Father's first two issues. **See id**.[3]

In his third issue, Father contends that, because the trial court found in the custody proceedings, using the lesser preponderance of the evidence and best interest standards, that Father is a fit and proper parent, the trial court was precluded from finding in the dependency proceedings, under the higher, clear and convincing standard, that Father was unfit to care for

---

[3] Because the clear and convincing evidence supported a finding of dependency under section 6302(6), we need not address Father's claims with regard to section 6302(1). In any event, as noted above, parental fitness is not a prerequisite to a dependency adjudication.

Child.[4]   Father's Brief at 32; **see also id**. at 20, 21, 22-23, 38 (wherein Father makes this same argument).   Father asserts that the evidence presented at the custody trial was incorporated into the dependency proceedings, including evidence regarding Father's ability to be a ready, willing and able parent, and that no additional evidence regarding Father's fitness was presented at the dependency proceedings.  **Id**. at 19, 32.  Father claims that the trial court made extensive findings of fact in the custody case, and that LCCYS adopted those findings as its evidence in the dependency proceedings.  **Id**. at 33.  Father argues that the evidence of record establishes that Child has proper parental care and control when he is with Father.  **Id**. at 34.   Father contends that there is no clear and convincing evidence that (1) Child is habitually disobedient; (2) has an underlying psychological issue; or (3) is in need of care and treatment that cannot be offered outside of the dependency setting.  **Id**.  Father asserts that the trial court erred by adopting its findings from the concurrent

---

[4] Father misunderstands the relationship between two evidentiary standards at issue in this case.  A "preponderance of the evidence" standard merely requires that the evidence in favor of a proposition is of "greater weight" than the evidence in opposition. **See Ferri v. Ferri**, 854 A.2d 600, 603 (Pa. Super. 2004) (stating that "to tip a scale slightly is the criteria or requirement for preponderance of the evidence.") (citation and internal quotation marks omitted).  In contrast, a "clear and convincing" evidentiary standard is a more difficult burden to meet, and requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear determination, without hesitancy, of the truth of the precise facts at issue." **In re A.B.**, 63 A.3d at 349.  That a particular body of evidence may satisfy the easier "preponderance of the evidence" standard does not necessarily mean that the same body of evidence can or will satisfy the more demanding "clear and convincing" evidence standard.

custody matter, and relying on such findings as a basis for its adjudication of dependency. *Id*. at 34-35.

In its Opinion, the trial court addressed Father's third issue, set forth the relevant law, and determined that it lacks merit. *See* Trial Court Opinion, 8/5/15, at 13-14. We concur with the reasoning of the trial court and affirm on this basis as to Father's third issue. *See id*.

As Father's fourth and fifth issues pertain to the trial court's dispositional ruling, we will address them together. In his fourth issue, Father challenges the trial court's characterization of Child's behavior as dangerous, and claims that Child was never in harm's way. Father's Brief at 36. Father argues that, at the initial disposition hearing, LCCYS presented no evidence regarding alternative dispositions for Child, and ignored the family and friends who came forward during the dependency proceedings to offer themselves as placement alternatives. *Id*. at 36. Father contends that Child's placement at Krause Youth Center was inappropriate, and that the only appropriate placement for Child was with Father. *Id*. at 38. Father claims that LCCYS made no effort to determine an appropriate placement for Child, or whether, with services, he could remain with Father or Mother. **Id**. Father argues that, as a result of his federal *habeas corpus* lawsuit, Child was removed from Krause Youth Shelter and Child's placement was changed to foster care. *Id*. at 39. Father asserts that the trial court's decisions regarding placement of Child were not designed to serve Child's best

interests, and were instead designed to punish Child until he goes with Mother. *Id*. at 41.[5]

In his fifth issue, Father contends that the trial court created a situation where there was nothing that Father could do to prevent Child from being adjudicated dependent or eliminate the need for his placement. *Id*. at 28. Father asserts that the trial court abused its discretion by finding that Child needs trauma therapy and bonding assessments, and by ratifying a dispositional plan that precludes reunification with Father. *Id*. at 32.[6]

A dependency hearing is a two-stage process. As noted above, the first stage requires the trial court to determine by clear and convincing evidence whether the child is dependent pursuant to the standards set forth in section 6302. *See In re A.B.*, 63 A.3d at 349. If the trial court finds that the child is dependent, it may move to the second stage, in which it must make an appropriate disposition based upon an inquiry into the best

---

[5] Father additionally contends that Child's subsequent placement with a foster family in Crawford County was inappropriate, and was not in Child's best interest. Father's Brief at 40. Father also contends that Child's current placement with Father's cousins is inappropriate. *Id*. at 41. However, these events occurred subsequent to the entry of the June 16, 2015 Order from which Father appeals, and are not part of the record on appeal. Accordingly, we cannot consider them. *See* Pa.R.A.P. 1921, note (stating that "[a]n appellate court may consider only the facts which have been duly certified in the record on appeal.").

[6] Father also references hearings conducted on July 2, 2015, and August 10, 2015, and efforts made by LCCYS to unify Child and Father subsequent to the June 16, 2015 Order from which Father appeals. *See* Father's Brief at 29-31. However, because these events occurred subsequent to the entry of the June 16, 2015 Order, they are not part of the record on appeal. Accordingly, we cannot consider them. *See* Pa.R.A.P. 1921, note.

interests of the child. *See In re L.C., II*, 900 A.2d 378, 381 (Pa. Super. 2006).

Regarding the placement of a child who has been adjudicated dependent, this Court has explained:

> [w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best 'interest, not on what the parent wants or which goals the parent has achieved. *See In re Sweeney*, 393 Pa. Super. 437, 574 A.2d 690, 691 (1990) (noting that "[o]nce a child is adjudicated dependent. . . the issues of custody and continuation of foster care are determined by the child's best interests"). Moreover, although preserving the unity of the family is a purpose of the Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." *In re E.F.V.*, 315 Pa.Super. 246, 461 A.2d 1263, 1267 (1983).

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006).

> The Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition. ... We will disturb a [trial] court's disposition only upon a showing of a manifest abuse of discretion.

*Interest of C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014) (citations omitted).

In its Opinion, the trial court addressed Father's arguments, and thoroughly stated its reasons, based on competent evidence of record, for its dispositional determination that placement in foster care was in Child's best interest. *See* Trial Court Opinion, 8/5/15, at 9-14. We discern no manifest abuse of discretion by the trial court, and affirm on this basis as to Father's fourth and fifth issues. *See id*.

To the extent that Father contends that the trial court erred by determining, as part of its disposition, that a bonding assessment and trauma evaluation should be conducted, we conclude that such determination is amply supported by the record. Given Child's repeated and defiant refusal to stay in Mother's custody, or to follow Father's directive to do so, an assessment of Child's relationships with his parents was appropriate. **See** Trial Court Opinion, 8/5/14, at 4, 7. Additionally, given the bitterly contentious custody proceedings between Child's parents, which have extended continuously since 2004 and have included allegations of physical harm and parental alienation, a trauma evaluation of Child was also appropriate. **See id**. at 3-4 (referencing one jurist's lamentation that this case is "one of the most tragic custody cases she had ever seen and one of the most tragic cases of parental alienation by [Father]."); **see also** Father's Brief at 32 (wherein Father concedes that "this case stems from protracted and contentious custody litigation" and that "Mother and Father have been arguing about custody of [Child] for nearly 11 years."). Accordingly, we discern no abuse of discretion by the trial court in ordering these services for Child.

In his final issue, Father contends that President Judge Dominick Motto ("President Judge Motto") prejudged the dependency matter by ruling, in the custody case, that law enforcement was prohibited from returning Child to Father if Child ran away during Mother's custodial time. Father's Brief at 43.

Father asserts that the effect of this provision was that if Child ran away from Mother, he would be adjudicated dependent. *Id*. at 43-44. Father claims that President Judge Motto knew that Child would not stay with Mother, and therefore "created a situation" where Father was no longer a ready, willing and able parent." *Id*. at 43. Father contends that, by prejudging the dependency matter and engaging in actions designed to punish Child, President Judge Motto's actions raise the appearance of impropriety. *Id*. at 42. Father asserts that President Judge Motto should have recused himself, pursuant to Father's Motion for recusal, and another judge from outside Lawrence County should have been appointed to hear the case.[7] *Id*. Father argues that President Judge Motto's February 27, 2015 Custody Order and supporting Opinion reflect his "impression of Father as conniving, underhanded, and determined to undermine [Child's] relationship with Mother." *Id*. at 46. Father contends that "there was an obvious and absolute appearance of impropriety" and President Judge Motto erred by denying Father's Motion to recuse. *Id*. at 48.

Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. *See Commonwealth v. Bonds*, 890 A.2d 414, 418 (Pa. Super. 2005). Our trial judges are "honorable, fair and competent," and although we employ an abuse of

---

[7] Father notes that President Judge Motto is the fifth judge assigned to this case, and that two of the prior judges assigned to this case recused themselves when suit was filed against them by Mother or Father. Father's Brief at 43.

discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. *Id*. (citation omitted). Accordingly, a party seeking to compel a judge's disqualification must "produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998) (citations omitted).

In light of the high burden placed on Father by our standard of review, as well as our review of the record and the trial court's well-reasoned explanation, we conclude that Father has failed to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to President Judge Motto's ability to preside impartially. *See id*. To the contrary, given the extensive evidence of Child's ongoing course of defiance, Child's difficulties in his relationship with Mother, Father's efforts to alienate Child from Mother, and the element of contentiousness that has pervaded this case from its inception, we conclude that President Judge Motto assessed the dependency Petition in an impartial manner, and fashioned an appropriate dispositional Order that was designed to serve Child's best interests. *See* Trial Court Opinion, 8/5/15, at 9-14; *see also id*. at 14-15 (wherein President Judge Motto addressed his decision to deny Father's Motion to recuse). Accordingly, we find no merit to Father's argument that

President Judge Motto's action raised an appearance of impropriety, or that he erred by declining to recuse himself from this case.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2016

IN THE INTEREST OF:             :   IN THE COURT OF COMMON PLEAS
                                :
C.T.                            :   LAWRENCE COUNTY, PENNSYLVANIA
                                :
                                :   NO. 30 OF 2015, D.P.

### APPEARANCES

For Lawrence County Children        Carolyn J. Flannery, Esq.
and Youth Services:                 1001 E. Washington Street
                                    New Castle, PA  16101

For K.T.:                           Richard B. Sandow, Esq.
                                    Stephanie T. Anderson, Esq.
                                    Jones, Gregg, Greehan &
                                         Gerace, LLP
                                    411 Seventh Avenue
                                    Suite 1200
                                    Pittsburgh, PA  15219

For H.T.:                           Erica N. Burns, Esq.
                                    Richard Ducote, Esq.
                                    4800 Liberty Avenue
                                    Third Floor
                                    Pittsburgh, PA  15224

For C.T.:                           Stephen D. Colafella, Esq.
                                    671 Third Street
                                    Beaver, PA  15009

                                    Larry J. Puntureri, Esq.
                                    2102 Wilmington Road
                                    New Castle, PA  16105

### OPINION PURSUANT TO Pa.R.A.P.1925(a)

MOTTO, P.J.                                         AUGUST 5, 2015

K.T., father of the child, C.T., has appealed the order of June 16, 2015, wherein the Court found C.T. to be a dependent child under the Juvenile Act, 42 Pa.C.A.A. §6301 et.seq.

The Court found C.T. to be dependent on two separate grounds. The first ground is that C.T. is dependent pursuant to Section 6302(1) in that he is without proper parental care

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2015 AUG -5  A II: 45

HELEN I. MORGAN
PRO AND CLERK

or control necessary for his physical, mental or emotional health. The second ground is that C.T. is dependent pursuant to 6302(6) in that C.T. has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parents, and who is ungovernable and found to be in need of care, treatment or supervision.

The factual basis for finding C.T. to be dependent under the Juvenile Act is that C.T., a child who is approximately 14½ years of age, repeatedly and consistently refuses to remain in the physical custody of his mother, H.T., despite the fact that extensive custody proceedings have, since October of 2013, consistently and specifically ordered that he be in the primary physical custody of H.T., including the order of the Superior Court issued in April of 2015 wherein the Superior Court specifically directed that C.T. be delivered by K.T. to the physical custody of H.T. Each time that C.T. is brought to H.T. he runs away, often times placing himself in harm's way. In the last custody order issued by this Court on February 2, 2015, this Court directed that if C.T. should run, he was to be returned to H.T. and not to be returned to K.T., the reasons for which appear in the Opinion and Order dated February 27, 2015, issued in the custody case K.T. v. H.T., No. 11297 of 2006, C.A., Lawrence County, a copy of which Opinion is of record in this case.

K.T. immediately appealed the Custody Order and sought a stay. This Court denied a stay. A stay was requested to be issued by the Superior Court, which denied the stay and

FILED/ORIGINAL

2015 AUG -5 A H: 45

HELEN I. MORGAN
PRO AND CLERK

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

specifically directed that K.T. deliver the child to H.T. on April 3, 20156. When K.T., Father, delivered C.T. to the residence of H.T., Mother, C.T. again left and walked, at night in the rain, to the state police barracks, culminating in the Lawrence County Children and Youth initiating the dependency proceedings. After dependency proceedings were initiated, K.T. sought a further stay from the Superior Court which was again denied. The appeal was argued before the Superior Court on July 8, 2015 and a decision is pending.

## FACTUAL AND PROCEDURAL HISTORY

The dependency proceeding emanates from the custody proceedings at case No. 11297 of 2006, C.A. The parties have engaged in continuous litigation since their separation in 2004; however, the circumstances that have resulted in the dependency proceedings began when the Honorable Thomas M. Piccione of this Court issued an opinion and order dated October 1, 2013, which awarded sole legal and primary physical custody to H.T. Although the Court will begin this discussion from that point, the Court notes that the Opinion and Order of this Court dated February 27, 2015 contains a continuous history preceding that date, which illustrates failed efforts of K.T. both in this Court and in the Court of Common Pleas of Westmoreland County, to suggest that H.T. and her father had either threatened or physically harmed K.T., all of which allegations were found by various jurists to be unfounded. In awarding primary physical custody and sole legal custody to

FILED/ORIGINAL

2015 AUG -5 A II: 45

HELEN I. MORGAN
PRO AND CLERK

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

H.T., Judge Piccione concluded that if K.T. was awarded custody, the relationship of C.T. with H.T. would dissipate to a point of disrepair. Judge Piccione's Order of October 1, 2013 was appealed by K.T. to the Superior Court of Pennsylvania, which affirmed the October 1, 2013 Order and its Opinion filed May 30, 2014.

Approximately one month after the October 1, 2013 custody order, C.T. began refusing to spend any time with his mother, H.T. Prior to these juvenile proceedings, C.T. had not been in H.T.'s custody since December of 2013, despite the court orders. Although these matters are set forth in more detail in the attached Opinion of February 27, 2015, essentially at any time that C.T. was brought to H.T.'s residence, he would run, at times placing himself in danger such as running out late at night in his pajamas, jumping out of a moving vehicle on a cold winter's night and hiding behind a dumpster until he was found, which incidents resulted in the filing of a petition for protection from abuse by K.T. on behalf of C.T. against H.T. in the Westmoreland County Court of Common Pleas. After hearings before the Honorable Megan Bilik-DeFazio, these petitions were dismissed with Judge Bilik-DeFazio referring to this case as one of the most tragic custody cases she had ever seen and one of the most tragic cases of parental alienation by K.T. That judge found C.T. to be deliberate, that he knows what he is doing and that he is manipulating. Judge Bilik-DeFazio also found that the testimony of H.T. was credible, that H.T. had never threatened C.T., and that the explanation of H.T. as to

FILED/ORIGINAL

2015 AUG -5 A II: 45

HELEN I. MORGAN
PRO AND CLERK

what occurred on January 1, 2014 when C.T. jumped out of her moving vehicle was reasonable and that any testimony of C.T. that he was fearful of H.T. was not credible. K.T. appealed the decision of Judge Bilik-DeFazio and that decision was affirmed by the Superior Court.

It is noteworthy that during the proceedings in Westmoreland County, K.T. in passing through security denied that he had any weapons on him. However, security discovered in his briefcase a loaded Glock 9 mm firearm and a folding knife with a 3¾ inch blade. K.T. was charged criminally as the result of this conduct. What developed as the result of this information was that K.T. had been carrying this loaded firearm on custody exchanges with H.T.

During the time that K.T. appealed the decision of Judge Piccione, C.T. remained physically with K.T. without any authority whatsoever as the custody order gave primary custody to H.T. Judge Piccione did not enforce the custody order while it was on appeal. After the Superior Court affirmed the custody order, proceedings were commenced to attempt to enforce that order; however, Judge Piccione went on a medical leave during this period of time and could not continue with the case. The case was then assigned to visiting Judge Francis J. Fornelli, who recused himself after the assignment because of having some connection with an individual who was likely to be a witness in the case. The case was then reassigned this judge.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2015 AUG -5 A 11: 45

HELEN I. MORGAN
PRO AND CLERK

It should be noted that this case was originally assigned to the Family Court judge of this county, the Honorable John W. Hodge, who recused himself as the result of a federal law suit filed against him by K.T. The case was then reassigned to Senior Judge Eugene E. Fike, II, who recused himself because of a federal lawsuit filed against him by H.T. When the case was assigned to Judge Piccione, a federal lawsuit was filed by K.T. against Judge Piccione, but Judge Piccione declined to recuse himself.

At the time Judge Piccione issued his custody order in October of 2013, C.T. had been in attendance at the Neshannock Township School District in Lawrence County, Pennsylvania where he had always attended school, the district where H.T.'s residence is located. When the next school year commenced after C.T. had begun refusing to spend any time with H.T., K.T., without any legal authority to do so, enrolled C.T. in the Hempfield School District in Westmoreland County, where K.T. resides. K.T. has been found to be in contempt of court for so doing.

The matters before this Court, after the Superior Court had affirmed the decision of Judge Piccione, were competing petitions for modification filed by both H.T. and K.T., K.T. seeking full custody of C.T. and H.T. seeking to modify the custody order in a manner that would allow enforcement of the order giving her primary custody. Extensive proceedings were held before this Court with the result that this Court found that there was no basis for C.T. to have any fear of H.T.; that

53RD
JUDICIAL
DISTRICT

.AWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2015 AUG -5 A 11: 45

HELEN I. MORGAN

in reality C.T. has no fear of H.T. or of his maternal grandfather and that C.T. expresses his fear only for the purpose of fulfilling the wishes of K.T. that he have no contact with H.T. The Court further concluded that the conduct of K.T. is alienating C.T. from H.T. (Trial Court Opinion of February 27, 2015, p. 83).

The purpose of including in Paragraph 16 of the custody order a directive that C.T. not be permitted to be at the residence designated at 130 Fireside Drive nor be permitted for any reason to be placed in the custody of K.T. during the primary custody time of H.T. with the further direction that if for any reason the child removes himself from the custody of H.T. that he is to be returned to H.T. and not to K.T. or anyone acting on behalf of K.T. is to address the fact that returning C.T. to K.T. will only serve to continue was has existed since December of 2013, that the orders of this Court and of the Superior Court will continue to be ignored.

On Friday, April 3, 2015, the date that the Superior Court ordered that C.T. be returned to H.T. by K.T., C.T. was dropped off at the residence of H.T. by K.T. C.T. immediately walked away from the residence and in the evening hours and eventually arrived at a barracks of the Pennsylvania State Police. C.T. could not be returned to H.T. as he adamantly expressed that he would not obey the court order and would continue to leave. As a result, Lawrence County Children and Youth Services (LCCYS) was contacted. An oral ex parte order was obtained and C.T. was placed in shelter care. On April 6, 2015 an ex parte order

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

7

was obtained. That same day an application for shelter care was filed. After a hearing before Master Papa, a recommendation was made that C.T. remain in shelter care. The recommendation was approved by court order issued April 7, 2015.

A dependency petition was timely filed alleging dependency pursuant to Section 6302(a)(1) and (6) of the Juvenile Act. After hearing, the master recommended that C.T. be adjudicated dependent. The recommendation was approved and entered as an order on May 5, 2015. A disposition hearing was held on May 5, 2015 before the master who recommended that C.T. remain in shelter care, which recommendation was also approved by the Court.

K.T. requested a de novo review before the Court. Following a de novo proceeding that Court found C.T. to be dependent and ordered C.T. to be placed in foster care. The pending review proceedings are focused on whether C.T. should be placed in a kinship foster home setting. The Court has indicated that a foster home neutral to both parties is preferred, but may not be possible as potential and existing foster parents are concerned that they may be the subject of a lawsuit by K.T. because of the contentiousness of the litigation and the propensity for corollary suits.

K.T. filed a motion for this judge to recuse himself because of the ruling made in the custody litigation that C.T. not be returned to K.T. if he should run from H.T. The Court denied the recusal motion.

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

8

## DISCUSSION

A dependent child is defined in pertinent part at 42 Pa.C.S.A. 6302 as a child who (1) is without proper parental care or control, or other care or control necessary for its physical, mental or emotional health; or (6) has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, and who is ungovernable and found to be in need of care, treatment or supervision.

As to §6302(1), the Court has found that C.T. is without proper parental care or control as neither parent is able to or willing to control him to the extent that he will remain in compliance with court orders to be in the physical custody of H.T. He clearly will not obey the directive of H.T. that he remain in her custody as required by order of court. K.T. has testified repeatedly that he directs C.T. to remain with H.T. as required by the court order but that C.T. refuses to do so. The Court recognizes that in the case of In re: M.L., 562 Pa. 646, 757 A.2d 849 (2000), the Supreme Court held that a child, whose non-custodial parent is ready, willing and able to provide adequate care to the child, cannot be found to be dependent under §6302(1). However, this Court has found that returning C.T. to K.T. will only promote the continued alienating behavior and will never bring about compliance with the custody order, but will only continue in perpetuity what has existed since December of 2013. Thus, returning C.T. to K.T. would only continue a circumstance that C.T. would remain without proper parental care or control necessary for his

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

9

physical, mental and emotional health, as what is necessary is that the alienating behavior be addressed as well as his mental and emotional needs. That is presently occurring in that while in placement in a foster home, he is undergoing therapies for bonding with H.T. and to address emotional trauma. This treatment could not possibly be provided to him if he were to be in the lawful physical custody of K.T.

Pursuant to §6302(6) a child may be found dependent where he has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in need of care, treatment or supervision.

Here, it is clear that C.T. has committed specific act or acts of habitual disobedience of the reasonable and lawful commands of his parents. H.T. clearly commands that C.T. remain in her custody as required by court order. Despite these commands, C.T. habitually disobeys her. K.T. has testified that he commands C.T. to obey the court order and remain in the physical custody of H.T. but that C.T. will not obey him. As to this issue that C.T. obey the court order and remain in the physical custody of H.T., he is ungovernable and not even the Court is able to persuade him that he should not disobey a court order. It is clear that the current circumstances of C.T. are such that he is need of care and treatment that can address the effects that prolonged custody litigation has had upon him. That care and treatment plan is

currently being developed for him through the juvenile court procedure.

K.T.'s argument that C.T. cannot be considered to be dependent since K.T. is ready, willing and able to provide adequate care and C.T. will stay with him, does not apply to a finding of dependency pursuant to §6302(6). In the case of In re: K.A.D., 779 A.2d 540 (2001), father in appealed a dependency finding relying upon In re: M.L., Supra, for the proposition that a child cannot be found dependent where there is a non-custodial parent able to provide adequate care. In K.A.D., the Superior Court found that father's reliance upon In re: M.L. was misplaced because that principle applied to a dependency finding under §6302(1) and not to dependency findings under §6302(5) and (6). The K.A.D. court noted that the court in In re: M.L. was speaking solely to the §6302(1) definition which clearly states the child must lack a parent who can provide appropriate care to the child and child whose non-custodial parent is ready, willing and able to provide such care does not meet this definition. K.A.D. concluded that In re: M.L. did not apply to the dependency definition contained in §6302(6).

K.T. cites In the interest of Justin S., 543 A.2d 1192 (Pa.Super. 1988) for the proposition that C.T. cannot be adjudicated dependent when K.T. is a ready, willing and able parent. The court agrees that this principle applies to alleged dependency pursuant to §6302(a)(1), but disagrees that it has any application to alleged dependency pursuant to

53RD
JUDICIAL
DISTRICT

AWRENCE COUNTY
PENNSYLVANIA

11

§6302(6). In re: K.A.D., supra. As to §6302(a)(1), as noted in Justin S., the Court must examine two discrete questions: (1) Is the child at this moment without proper parental care or control; and (2) if not, is such care and control immediately available. Justin S., 375 Pa.Super. at 99, 543 A.2d at 1199. Here, both parents have admitted their inability to control C.T. He adamantly refuses to obey either parent. This fact is undisputed by all parties. Interestingly, if C.T refused to attend school as directed by his parents there would be little question as to lack of parental control and dependency. C.T.'s refusal to obey the court order for no legitimate reason should be equated with refusal to attend school. The fact that C.T. will stay with K.T. ignores the central issue; that H.T. is the custodial parent having primary physical custody and that C.T. does not have the option of deciding for himself whether he will choose to comply with the custody orders. The issue of control relates to the ability to control C.T.'s behavior and bring about compliance with the court orders.

K.T. makes a similar assignment of error as to dependency pursuant to §6302(a)(6) asserting that the court erred in finding that C.T. is ungovernable. He is clearly ungovernable as to his consistent and repeated conduct of running away from H.T. The fact that he may be governable to other directives of K.T. fails to acknowledge his lack of governability as to his refusal to obey a court order. The Juvenile Act permits a finding of dependency where the evidence establishes that the child is lacking a particular type of care necessary to meet

his individual specific need. <u>In re: R.R.</u>, 455 Pa.Super. 1, 686 A.2d 1316 (1996). Here, the need is to address C.T.'s conduct in continually running away from his custodial parent.

In general, K.T.'s assignments of error assert that the proper disposition of this matter is to simply place C.T. in the custody of K.T. To do so would render the custody order meaningless. If a child's uncontrollable recalcitrance to a court order cannot be a basis for a finding of dependency, then every custody order is subject the consent of the child, as to its enforceability.

C.T.'s illogical behavior establishes that he is in need of assessment and counseling that can be provided only in the context of a controlled environment. K.T.'s proposed solution would only reward C.T. for his defiance and provide K.T. with the achievement of his objectives by default.

K.T. further assigns error in the court relying on findings in the concurrent custody proceeding. However, K.T. does not identify what findings the Court relied upon that were not substantiated in the dependency record. The custody opinion and order was entered of record without objection, and was clearly relevant as it established the legal relationship between the parties as to the child and the primary custodial rights of H.T., as well as the basis for directing that the child should not be returned to K.T. during H.T.'s custodial time. The custody proceedings provided the basis for finding that C.T. is habitually disobedient and lacks parental control by running away from H.T. and putting himself in harm's way.

There is no error in considering prior litigation that impacts upon the issues in a dependency proceeding. In the case of In re:E.B., 83 A.3d 426 (Pa.Super. 2013), the Court considered that father had a stay-away order against the child's older siblings due to reports of physical abuse, that father was in-and-out of the criminal system and currently serving probation, that he had two indicated reports of physical abuse against the child's siblings and was facing serious criminal charges for injuring the child's siblings. The court rejected father's argument that the prior and pending corollary proceedings did not provide evidence as to his current ability to care for the child.

Under either subsection of §6302, either (1) or (6), the Court has found that although K.T. is ready and willing, he is not in a position to immediately provide the proper care needed by C.T. for his mental and emotional health as we are dealing with a child who is exhibiting a behavioral problem, in that he is continuing to run away from his custodial parent without any basis or reason for so doing. To allow this circumstance to continue whereby court orders continue to provide for H.T. to have primary physical custody but are simply ignored would be irresponsible. Compliance with a court order should not be optional.

The undersigned trial judge was requested by K.T. to recuse himself on the theory that this Court had already decided the dependency issue in connection with the February 27, 2015 custody order and therefore could not be expected to

be impartial relative to addressing dependency in connection with the dependency case brought under the Juvenile Act. The Court knows of no authority whereby a judge must recuse himself because he has decided a corollary piece of litigation and then is in the position to address other aspect of that litigation in another procedure. For example, a judge hearing a protection from abuse proceeding and making a finding that the defendant violated the Protection From Abuse Act and then issuing a PFA order is not conflicted from later hearing a complaint for indirect criminal contempt of court brought on the allegation that the defendant violated a provision of the PFA order. Similarly, in a divorce case, a judge could very well make a finding in the divorce litigation that could impact upon a party's ability to obtain a support order in a related domestic relations proceeding, but that judge would not be conflicted from hearing that domestic relations proceeding even though he may have made a previous ruling in the divorce case that impacts upon the domestic relations proceeding. In any event, even if this case were assigned to another judge, that judge would be bound by the fact that a custody determination had been made in the custody case to the extent that the custody order would impact upon the dependency proceedings.

Finally, K.T. has raised objections to the placement of C.T. in these dependency proceedings. C.T. was placed in shelter care initially. Krause Shelter is a licensed shelter care facility. However, that placement was temporary pending efforts to find a suitable foster placement for C.T. C.T.

frustrated the efforts for placement in that when he was brought to a therapist for evaluation, he objected to the therapist because he noticed a certification on the office wall of the therapist that contained the name of a former associate of the therapist who C.T. believed had some familiarity with H.T., and thus the therapist was not permitted to evaluate C.T. Additionally, placing C.T. in foster care has been problematic because at least two foster parents have been located who initially were willing to accept C.T. but then indicated their reluctance to take C.T. because of the proclivity for corollary litigation to result from the relationship between the parties. Presently, C.T. is in a foster placement with an acceptable foster family who has indicated they would like to have C.T. removed because of the non-consent of K.T. to the placement. Thus at present the Court has directed all parties to submit names of potential placements, including kinship placements, to be investigated by LCCYS and to be evaluated at the next dispositional hearing.

It is correct that LCCYS has advocated that a proper foster placement should not be with individuals friendly with or related to K.T. or H.T. as neutrality would benefit C.T.'s contemplated therapies. However, because of the conflicted nature of the potential litigation that arises from this case, kinship placement may be the only possible placement although not the most desirable. That issue is scheduled to be addressed on the next scheduled dispositional review hearing.

FILED/ORIGINAL

2015 AUG -5 A 11:45

HELEN L MORGAN
PROTHO AND CLERK