**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Richard BONDS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 24, 2005.

Filed Dec. 30, 2005.

---

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: TODD, J., McEWEN, P.J.E. and JOHNSON, J.

OPINION BY JOHNSON, J.:

¶ 1 Richard Bonds appeals the judgment of sentence imposed following his convictions of two counts each of robbery, unlawful restraint, and false imprisonment, and single counts of burglary, criminal conspiracy, and possession of instruments of crime. 18 Pa.C.S. §§ 3701, 2902, 2903, 3502, 903, 907 (respectively). Bonds contends that the aggregate sentence the trial court imposed (18 to 36 years' incarceration with a probationary tail of 17 years) was plainly excessive, reflecting the con-

tinuing bias of the trial judge, whose sentence in this case we have twice vacated. Bonds argues accordingly that the trial judge erred in not recusing himself and that we should remand the case again and order the matter assigned to a new sentencing judge. Following careful consideration, we do not find that the trial court abused its discretion either in sentencing or in refusing to recuse. Accordingly, we affirm the judgment of sentence.

¶ 2 This is Bonds's third direct appeal of his judgment of sentence. His first appeal prompted a panel of this Court to affirm his conviction but to vacate the sentence with direction to the trial court to obtain a pre-sentence investigation report so as to allow adequate information for individualized sentencing. *See Commonwealth v. Bonds,* 803 A.2d 788 (Pa.Super.2002) (unpublished memorandum). In our disposition from that appeal, we provided the following recitation of the facts underlying Bonds's convictions:

> At approximately 11:15 p.m. on the evening of December 26, 1995, David Arbel (David) answered a knock at the door of his home in northeast Philadelphia expecting to find his girlfriend. Instead he found [Bonds] and two male accomplices. [Bonds] put a semiautomatic handgun to David's head and one to his stomach and asked him where his brother, Avi Arbel (Avi) was. Led by [Bonds], the intruders forced their way into the house. [Bonds] held David at gunpoint while one of the men went to retrieve Avi from the bedroom. They returned with Avi, who was bleeding from the head where one of the assailants had struck him with a pistol. The brothers were told to keep their heads down or be shot. The men demanded to know where they would find money, drugs, weapons or anything of value, then dragged the brothers through the house, screaming at them and repeatedly striking and kicking them until they responded. After the brothers had complied, the assailants bound the brothers' legs, hands, eyes and noses using duct tape, kicking and hitting them in their stomachs and heads and pulling their hair as they did so. With the brothers gagged and bound, and after repeated assaults, the assailants left, taking $3,100 in cash and $12,000 in music equipment.

> The brothers freed themselves and fled to a neighbor's house where they called the police. Two weeks after the incident, Avi recognized [Bonds] at " 'B.J.'s Store" in northeast Philadelphia (B.J.'s Store). He immediately summoned the police and David to B.J.'s Store where identification was attempted. David told the police that he was uncertain whether [Bonds] was the man who held the gun during the incident because [Bonds] now appeared clean-shaven. The police released [Bonds] at B.J.'s Store.

> The next day, the assigned detective, Robert Weaver, spoke to Avi, who told him he had been 99.9% sure of [Bonds]'s identity, but that the police officers had pressured him to say he was certain, and he was afraid to do so. [Detective] Weaver encouraged Avi to tell the truth. Three days later, [Detective] Weaver showed Avi a photo array. Avi made a positive identification of [Bonds]. [Detective] Weaver used that identification to obtain a warrant for [Bonds]'s arrest.

> [Detective] Weaver made extensive and repeated attempts to locate and arrest [Bonds] without success. He made field visits to several reported addresses, including a visit to [Bonds]'s mother, and repeated checks of various computer databases. The case was later transferred to the police fugitive squad, and [Bonds] was eventually arrested in New York

City in 1999. David ultimately made a positive identification of Appellant at the preliminary hearing. By way of explanation, he explained that he had previously feared retaliation from [Bonds]'s cohorts if he identified him.

*Id.*, Slip Op. at 1–3.

¶ 3 In subsequent appeals, Bonds sought review before the Supreme Court of Pennsylvania, which denied allowance of appeal, *see Commonwealth v. Bonds,* 571 Pa. 703, 812 A.2d 1227 (Pa.2002) (Table), and the Supreme Court of the United States, which denied certiorari, *see Bonds v. Pennsylvania,* 538 U.S. 988, 123 S.Ct. 1807, 155 L.Ed.2d 685 (2003). In the interim, the trial court had ordered a compilation of the pre-sentence investigation report and, while Bonds's petition for certiorari remained pending, convened the re-sentencing hearing this Court had directed. Following the hearing, the court reimposed the original sentence. On the resulting appeal, a second panel of this Court determined that the trial court had acted without jurisdiction due to the pendency of Bonds's certiorari petition and again vacated the judgment of sentence. On re-sentencing, the court imposed the sentence now at issue. Because we detailed Bonds's offenses in our preceding Memoranda we do not do so here, but focus our review on Bonds's allegation that the sentencing history of this case demonstrates that the sentencing judge displayed bias against him or against those convicted of the same class of crimes. Bonds states the question for our review as follows:

> Is not the appearance of bias or prejudice clearly raised when a judge repeatedly eschews individualized sentencing, fails to comply with the applicable statutory and case law regarding sentencing, and repeatedly imposes long, excessive consecutive sentences on a defendant with no prior record of conviction despite [the Superior] Court's directives?

Brief for Appellant at 3.

¶ 4 Initially, we note that Bonds's allegations effectively seek review of the length of his sentence; accordingly, his challenge is one to the trial court's exercise of discretion in sentencing. Recasting the matter as a challenge to the court's refusal to recuse itself does nothing to establish grounds for relief when the bases upon which the defendant would show a need for recusal amount essentially to the court's reimposition of a lengthy sentence. *See Commonwealth v. Johnson,* 719 A.2d 778, 791 (Pa.Super.1998). The prescribed method of challenging the length of a sentence that is not illegal on its face requires compliance with Appellate Rule 2119(f). *See* Pa.R.A.P. 2119(f) (Discretionary aspects of sentence); *Commonwealth v. Goggins,* 748 A.2d 721, 727 (Pa.Super.2000). That rule mandates that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f). Such a statement must raise a substantial question, which we have described as "a *plausible* argument that the sentence is contrary to a specific provision of the Sentencing Code or to the fundamental norms underlying the sentencing process." *Goggins,* 748 A.2d at 727 (emphasis in original). Should a defendant fail to comply with these procedures, this Court is empowered to dismiss his appeal. *See Commonwealth v. Penrod,* 396 Pa.Super. 221, 578 A.2d 486, 490 (1990). We view Bonds's argument here as a vehicle to circumvent these rules under circumstances unlikely to support a substantial question given the trial court's evident compliance with the Sentencing

Guidelines following our prior remands. Under like circumstances, we have disregarded the defendant's invocation of the recusal standard and required compliance with Rule 2119(f). *See Johnson,* 719 A.2d at 791 (deeming recusal claim waived where, although the appellant alleged judicial bias and cloaked his claim in the language of recusal, his allegation "[did] not go to the issue of *bias* per se, but rather merely implicate[d] the discretionary aspects of appellant's sentence"). Although, in the absence of any objection from the Commonwealth, we are empowered to review claims that otherwise fail to comply with Rule 2119(f), we need not do so. *See Commonwealth v. Gambal,* 522 Pa. 280, 561 A.2d 710, 713 (1989) (allowing appellate review at the discretion of the court where appellant fails to include Rule 2119(f) statement but appellee had not objected to its absence). Consequently, as in *Johnson,* we deem waived Bonds's claim of sentencing error in the trial judge's failure to recuse himself.

¶ 5 Nevertheless, were we to consider the merits of Bonds's claim, we would find the grounds on which he relies insufficient to provide the relief he seeks. Bonds argues that the trial judge, the Honorable Eugene Edward J. Maier, abused his discretion in denying his motion for recusal. Brief for Appellant at 7. Bonds cites as evidence of judicial bias the court's initial imposition of sentence without conducting a pre-sentence investigation, followed by the court's subsequent imposition upon remand of a sentence only marginally lighter than the one first imposed. Brief for Appellant at 7–9 ("It is the denial of appellant's recusal motion which is the subject of this appeal, where Judge Maier persists on focusing on the severity of the crime in order to implement his own unique sentencing scheme of warehousing a defendant with no prior

record by imposing an excessive sentence regardless of what [the Superior Court] says or the Sentencing Code dictates."). Bonds argues further that even if these irregularities do not amount to proof of actual bias, they do support an appearance of bias and thereby establish grounds for recusal. Brief for Appellant at 13. ("Notwithstanding[ ] whether Judge Maier's actions throughout the history of this case evidence a true bias or prejudice against appellant or the class of crimes he committed, there can be no doubt that the appearance of such a bias or prejudice is clearly raised here.").

¶ 6 Upon review, we do not find the circumstantial showing upon which Bonds relies sufficient to demonstrate reversible error. Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are "honorable, fair and competent," and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. *Commonwealth v. Abu–Jamal,* 553 Pa. 485, 720 A.2d 79, 89 (1998).

> As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make.

*Id.* (citations omitted). Accordingly, a party seeking to compel a judge's disqualification must "produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Id.*

¶ 7 Given Judge Maier's evident compliance with the Sentencing Guidelines in reimposing sentence in this case, we find no evidence to establish "bias, prejudice or unfairness." *Id.* In point of fact, Judge Maier explained on the record that each of the sentences he imposed fell within the standard range of the Sentencing Guidelines, excepting the sentence for one count of robbery. N.T., 10/12/04, at 26–33. Although, as Bonds argues, Judge Maier cited the severity of the crime in imposing an aggravated range sentence on that conviction, he explained the sentence on grounds that Bonds's physical brutality during the robbery exceeds the conduct contemplated for a standard range robbery sentence. N.T., 10/12/04, at 32–33. Bonds provides no authority to establish that this explanation was not sufficient and, consequently, fails to sustain his claim of bias. A litigant seeking to impugn the court's integrity must show more than a deviation from the Guidelines.

¶ 8 Bonds also asserts bias in Judge Maier's imposition of a sentence on remand virtually identical to the sentence he had previously imposed, implying through this argument that Judge Maier acted in contravention of this Court's direction. Brief for Appellant 9. Regrettably, Bonds fails to acknowledge a key provision of our directive. We instructed as follows:

> Accordingly, we affirm the conviction but remand for resentencing, at which time the court shall conduct an appropriate presentence [sic] investigation and shall consider and evaluate all relevant sentencing factors. *If, after following the required procedures, the sentencing court concludes that the sentence imposed is appropriate, it may reimpose its original sentence. If, in the alternative, it determines that its original sentence is inappropriate, it shall resentence [sic] Appellant consistent with its findings on remand.*

*Bonds,* 803 A.2d 788 (Slip Op. at 22–23) (emphasis added). As this excerpt makes clear, contrary to Bonds's suggestion, this Court expressly left Judge Maier's discretion unfettered on remand. Consequently, we find no merit in Bonds's aspersion that, upon re-sentencing, Judge Maier acted in contravention of this Court's direction.

¶ 9 For the foregoing reasons, we find waived Bonds's claims of sentencing bias, and in the alternative, find them unsupported by the record. Accordingly, we affirm the judgment of sentence as entered by Judge Maier.

¶ 10 Judgment of sentence AFFIRMED.