J-S04032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.Y.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.S.T., FATHER | No. 1488 MDA 2014 |

Appeal from the Decree Entered August 8, 2014,
in the Court of Common Pleas of Dauphin County,
Orphans' Court, at No(s): 52 AD 2014

BEFORE:  BOWES, ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 25, 2015**

B.S.T. (Father) appeals from the order and decree entered August 8, 2014, in the Court of Common Pleas of Dauphin County, which terminated involuntarily Father's parental rights to his minor daughter, A.Y.T. (Child), and changed Child's permanency goal to adoption.[1]  Additionally, Father's counsel has filed an application for leave to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967).  Upon review, we grant counsel's application to withdraw and affirm the order and decree.

Child was born prematurely in November of 2012, and suffers from a variety of serious medical conditions, including osteopenia, hypothyroidism, and chronic lung disease.  On February 12, 2013, Dauphin County Social Services for Children and Youth (the Agency) received a referral from

---

* Retired Senior Judge assigned to the Superior Court.

[1] That same day, the orphans' court entered a decree terminating the parental rights of Child's mother, K.W. (Mother).  Mother agreed to relinquish her rights to Child voluntarily, and she is not a party to the instant appeal.

Harrisburg Hospital, expressing concerns regarding possible domestic violence between Mother and Father, and regarding the parents' lack of visitation and involvement with Child, who remained in the neonatal intensive care unit. Child was adjudicated dependent by order dated March 19, 2013.

On July 7, 2014, the Agency filed a petition to change Child's permanency goal to adoption and to terminate involuntarily Father's parental rights to Child. A goal change and termination hearing was held on August 7, 2014. The trial court entered its order and decree changing Child's permanency goal and terminating Father's parental rights the following day. Father timely filed a notice of appeal.[2] In the notice of appeal, Father's counsel included a statement pursuant to Pa.R.A.P. 1925(c)(4), indicating that Father's appeal was frivolous, and that counsel intended to file a petition for leave to withdraw, and to file a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981). Father's counsel filed his **Anders** brief and application for leave to withdraw on October 31, 2014.

---

[2] We observe that it was improper for Father to file a single notice of appeal from the combined goal change order and termination decree, which listed both the juvenile court and orphans' court docket numbers. **See** Pa.R.A.P. 341, Note ("Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."). However, we decline to quash Father's appeal. It is likely that, had Father correctly filed two notices of appeal, this Court would have consolidated both cases, and we discern no prejudice stemming from Father's procedural misstep.

- 2 -

Before reaching the merits of the issue raised in the **Anders** brief, we must first address counsel's request to withdraw. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)). To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an **Anders** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

In the instant matter, Father's counsel has petitioned this Court to withdraw, certifying that he has reviewed the case, and determined that Father's appeal is wholly frivolous. Counsel has filed a brief that includes a summary of the history and facts of the case, with citations to the record; a point of arguable merit; and counsel's analysis of why he has concluded that the appeal is frivolous, with citations to legal authority supporting that conclusion. Counsel has certified that he served Father with a copy of the *Anders* brief, and attached a copy of his letter to Father advising him that he may obtain new counsel or raise additional issues *pro se*.[3] Accordingly, counsel has complied with the requirements of *Anders* and *Santiago*. Based upon our examination of counsel's petition to withdraw and *Anders* brief, we conclude that counsel has satisfied the above requirements. "We, therefore, turn to the issue presented in counsel's *Anders* brief to make an independent judgment as to whether the appeal is, in fact, wholly

---

[3] Father has not responded to counsel's application to withdraw.

- 4 -

frivolous." ***Commonwealth v. Martuscelli***, 54 A.3d 940, 947 (Pa. Super.

2012).

Counsel's ***Anders*** brief raises the following issue for our review.

1. Did the trial judge's denial of [Father's] motion for recusal
constitute an abuse of discretion requiring a reversal of the
[termination of parental rights] order, given [Father's] history of
appearances before the judge as a juvenile court defendant, in
which the judge repeatedly rendered judgments against
[F]ather's interests, such that the judge knew or should have
known his impartiality toward [F]ather could reasonably be
questioned?

***Anders*** Brief at 4 (footnote omitted).

We consider this issue mindful of the following.

The denial of a motion to recuse is preserved as an
assignment of error that can be raised on appeal following the
conclusion of the case. We review a trial court's decision to
deny a motion to recuse for an abuse of discretion. Indeed, our
review of a trial court's denial of a motion to recuse is
exceptionally deferential. As we explained in ***Commonwealth
v. Harris***, 979 A.2d 387, 391–392 (Pa. Super. 2009) (quoting
in part ***Commonwealth v. Bonds***, 890 A.2d 414, 418 (Pa.
Super. 2005)), "We recognize that our trial judges are
'honorable, fair and competent,' and although we employ an
abuse of discretion standard, we do so recognizing that the
judge himself is best qualified to gauge his ability to preside
impartially." Hence, a trial judge should grant the motion to
recuse only if a doubt exists as to his or her ability to preside
impartially or if impartiality can be reasonably questioned.

***In re A.D.***, 93 A.3d 888, 892 (Pa. Super. 2014) (some citations omitted).

In order to prevail on a motion to recuse, the party seeking recusal

has the burden of "'produc[ing] evidence establishing bias, prejudice or

unfairness which raises a substantial doubt as to the jurist's ability to preside

impartially.'" *Id.* (quoting *In re S.H.*, 879 A.2d 802, 808 (Pa. Super. 2005)).

Instantly, the following discussion took place during a sidebar at the beginning of Father's goal change and termination hearing.

[Father's counsel]: My client advises me that he has appeared before you and has been adjudicated in delinquency proceedings several times. Accordingly, based on his representation, and with all due respect of course to the Court, I move for a recusal and ask the Court to give consideration to that motion.

THE COURT: Well, I mean, I understand the reason for your motion. First of all, other than his name and the fact that he appeared before me, I don't remember a doggone thing that he did because, you know, you figure I have about -- I don't know what it was last year -- like 12, 13 hundred court appearances of juveniles in front of me. Heck, I can't find my keys on a regular basis, let alone remember that. I'm not trying to make light of it, but I'm sure they're going to present a criminal record.

[Counsel for the Agency]: Yes. Well, we can. There's – we have lots of testimony regarding the termination. That's the focus versus the criminal aspect.

THE COURT: Well, okay. Maybe you misunderstood me. I would think that if you're saying this man is unfit to have this child, one of the things would be that you would present some type of record.

[Counsel for the Agency]: Yes. Those are public records as well.

THE COURT: But, truthfully, I don't remember anything. I don't recognize him. I know his name now that he appeared in front of me. I don't believe that that would have any effect on me.

[Counsel for Father]: Very good. Thank you, Your Honor.

THE COURT: So I deny your motion and note your exception for the record.

- 6 -

[Counsel for Father]: Thank you.

N.T., 8/7/2014, at 6-7.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by denying Father's motion to recuse. Father did not produce any evidence during the hearing, nor is there any evidence contained in the record on appeal, which indicates how many times, or under what circumstances, Father had appeared before the orphans' court judge previously. Even if there were such evidence, "the fact that the trial judge is aware of an accused's prior convictions does not automatically require that judge's recusal." *Commonwealth v. Hailey*, 480 A.2d 1240, 1242 (Pa. Super. 1984).

Moreover, we emphasize that the orphans' court's decision to terminate Father's parental rights and to change Child's permanency goal to adoption does not suggest partiality. The orphans' court produced a thorough opinion explaining its decision, which is supported by the applicable law, and by the testimony presented during the August 7, 2014, goal change and termination hearing.

Specifically, termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants

termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, we focus on Sections 2511(a)(1) and (b).[4] The

statute provides, in relevant part, as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > \*\*\*
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall

---

[4] We note that the orphans' court does not cite to or discuss Section 2511 in its opinion, or in its order and decree, and appears to have relied entirely on Section 6351 of the Juvenile Act in order to justify both terminating Father's parental rights and changing Child's permanency goal to adoption. The factors considered by the orphans' court in terminating Father's parental rights were similar to those required by the Adoption Act, and the orphans' court made factual findings which support termination.

- 8 -

not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

To meet the requirements of this Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998)).

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (some citations omitted).

With respect to the court's decision to change Child's permanency goal to adoption, this Court has summarized the relevant law in the following manner.

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

During Father's hearing, the court heard the testimony of the Agency caseworker, Erica Dressler. N.T., 8/7/2014, at 8. Ms. Dressler testified that she became Child's caseworker in February of 2014. *Id.* at 8. Ms. Dressler stated that she sent a letter to Father's last known address after she took over the case. *Id.* at 9, 23.[5] However, Ms. Dressler testified that Father

---

[5] Ms. Dressler admitted on cross-examination that there was a different address for Father listed in an Agency report, and that she did not send any communications to this address. N.T., 8/7/2014, at 30-31. Ms. Dressler also explained that, at some point, it was "brought to the attention of the Agency that [Father] was living in New York." *Id.* at 14. Ms. Dressler did not indicate that she ever attempted to contact Father while he was residing

never contacted her, and that she has had no contact with Father at all since that time. *Id.* at 9, 23, 39. Ms. Dressler conceded that Father had called Child's foster mother during or before December of 2013, but indicated that she was not aware of any visits at the foster home. *Id.* at 38.

Prior to Ms. Dressler's involvement in the case, Father attended a shelter care hearing on March 4, 2013, and a dependency hearing on March 19, 2013. *Id.* at 12-13. Father also attended one of Child's medical appointments and signed his initial family service plan (FSP). *Id.* at 11, 17. However, Ms. Dressler testified that Father failed to comply with several of his FSP objectives. *Id.* at 13-16, 19-21. She stated that she could not assess Father's compliance with his other FSP objectives, as Father had not been in contact with her. *Id.* at 20, 23-24. Ms. Dressler explained that aggravated circumstances were found as to Father on December 10, 2013, because he had failed to maintain contact with Child for six months, and the Agency was relieved of its duty to provide reasonable reunification efforts. *Id.* at 22.

Finally, Ms. Dressler noted that Child was in a pre-adoptive foster home, and that Child "adores" her foster mother. *Id.* at 26. She further indicated that Father did not have a "parental relationship" with Child, and that it would not be detrimental to Child if Father's parental rights were terminated. *Id.* at 28. Thus, Ms. Dressler opined that it was in Child's best

in New York. The Agency later discovered, in "early July of 2014," that Father had been incarcerated in the Dauphin County Prison. *Id.* at 24-25.

interest for Father's parental rights to be terminated, and for her permanency goal to be changed to adoption. *Id.* at 26-28.

Father testified that he was aware of his FSP objectives. *Id.* at 45. However, rather than completing those objectives, Father indicated that he moved to Rochester, New York, in March of 2013. *Id.* at 45, 47. According to Father, he travelled to Rochester because he had been accused of committing acts of domestic violence against Mother, and he "felt as though … leaving would be the best thing for the mother to get the daughter[.]" *Id.* at 44-45, 48. Father stated that he returned to Pennsylvania in February of 2014. *Id.* at 47. Father claimed that he stayed in touch with Mother and Child's foster parent in order to "figure out what was going on with [Child]." *Id.* at 45, 49. Father also indicated that he visited Child once for her birthday in November of 2013. *Id.* at 36, 46.

In short, the testimony presented at Father's hearing confirms that Father abandoned Child and failed or refused to perform parental duties for a period well in excess of six months prior to the filing of the Agency goal change and termination petition on July 7, 2014. The testimony also establishes that it is in Child's best interest to be adopted by her foster mother. This evidence was more than sufficient to terminate Father's parental rights pursuant to Sections 2511(a)(1) and (b) of the Adoption Act, and to change Child's permanency goal to adoption pursuant to Section 6351 of the Juvenile Act.

Accordingly, our independent review of Father's claim demonstrates that counsel's determination that Father has no meritorious issues on appeal is sound. Therefore, we grant counsel's application for leave to withdraw and affirm the orphans' court's order and decree.

Application for leave to withdraw granted. Order and decree affirmed.

Judge Allen joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2015