J-S24029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEITH WILLIAMS | |
| Appellant | No. 2773 EDA 2019 |

Appeal from the PCRA Order Entered August 30, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0009635-2014

BEFORE:  BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.                    **FILED AUGUST 11, 2020**

Appellant, Keith Williams, who is serving a sentence of 15—30 years' imprisonment for aggravated assault and persons not to possess firearms,[1] appeals from an order dismissing his amended petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541—9546.  Appellant argues that direct appeal counsel was ineffective for failing to challenge the discretionary aspects of Appellant's sentence on direct appeal.  We affirm.

The following evidence was adduced during trial:

On the afternoon of June 23, 2014, Dwayne Pierce, known to his neighbors by his nickname, Stroll, was on his porch on 11 East Clapier Street, chatting with his neighbors in the adjoining house, 13 East Clapier [Street].  Directly across Clapier Street, Evelyn McCullers sat on her porch chatting with her son, Darryl McCullers, who had stopped by to visit her.  The street had been blocked off,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702 and 6105, respectively.

a fire hydrant had been turned on, and children were playing in the street.

Pierce was on his porch when he saw Appellant, who [sic] he knew. Pierce had loaned Appellant money a few weeks earlier, and wanted to talk to him about repayment. Pierce came down from his porch to the street and was heading toward Appellant. As Pierce approached, Appellant seemed enraged and started cursing. At that point, Pierce turned to head back to the porch. A short time later, Pierce saw Appellant walking up Clapier [Street], whereupon he again came down off the porch and headed toward Appellant. Appellant then pulled a firearm from his waistband. Appellant pointed the gun at Pierce's chest and pulled the trigger, resulting in a misfire. Appellant then manipulated the gun, pointed it down, and shot Pierce in the left knee, then a moment later in the right leg.

Ms. McCullers heard shots, which caused her to look down Clapier [Street] to the end of the street, where she saw Appellant, known to her as Keith, firing shots. She could not make out a gun in Appellant's hand, but she saw him with his arm outstretched, making a movement as though pulling a trigger, "shooting up the street."

Mr. McCullers was standing on his mother's porch with his back to the street when he heard shots, which caused him to turn toward the street. The shots were coming from the direction of the intersection of Germantown Avenue and Clapier [Street]. Turning in that direction to holler for one of the children to take cover, he saw Appellant, whom he had grown up with and has known for 40 years or more, pointing an automatic-type gun at Pierce, who had already been shot. McCullers could make out the gun in Appellant's hand.

After the gunshots, McCullers came down from his mother's porch and pulled Pierce away from Appellant so he wouldn't get shot again. Pierce said: "He shot me, man. He shot me. I can't believe he fucking shot me." McCullers attempted to calm Pierce, who appeared shocked, and couldn't believe he'd been shot. After the shooting, Appellant put the gun in his waist band and went down Clapier [Street] to Germantown [Avenue] and around the corner.

Ms. McCullers called 9-1-1 and an ambulance and police responded to the scene. Ms. McCullers and [Mr. McCullers] spoke

briefly with police on the scene, but did not give statements to detectives until 35 days later.

Pierce was taken to Einstein hospital, where he was interviewed by police and shown a photo array. Pierce identified Appellant from the photo array.

Following the shooting, police went to the nearby store, at 3934 Germantown Avenue, over which Appellant lives, but he was not present. Security video was obtained from a nearby pizza shop. The video showed a black Mercedes in front of that location at about the time of the shooting, but the car was not there when police arrived. Appellant drives a black Mercedes, which Pierce saw him driving from the scene.

Detective Albert Ford of the U.S. Marshall's Fugitive Task Force attempted to serve an arrest warrant for Appellant on several occasions following its assignment to him on July 8, 2014. Based on information received, he finally located and arrested Appellant in a motel in Glassboro, New Jersey, on July 14, 2014. The detective's efforts were documented in his notes.

Detective Timothy Hart was assigned to process the crime scene, which he sketched and photographed, and from which he recovered five fired cartridge casings ("FCC"). These five FCC's were fired from the same gun. He also identified and photographed a blood trail on Clapier Street. Lt. Otto conducted a neighborhood canvass for witnesses.

Pierce received treatment for his wounds and was in the hospital for four or five days. He then went to inpatient therapy for two-three months. He continued out-patient treatment after discharge from the inpatient treatment. He was in a wheelchair for one and one-half to two months. His right leg fully recovered, but he continues to suffer chronic pain in his left knee.

There was a stipulation that Appellant did not have a valid license to carry a firearm and was a person prohibited from possessing a firearm, as defined by 18 Pa. C.S. § 6105.

Trial Court Opinion, 6/30/17, at 2-5 (record citations omitted).

Appellant waived a jury trial. During his non-jury trial, Pierce testified, as did Mr. and Mrs. McCullers and several police officers. Appellant stipulated that he was prohibited from possessing a firearm and presented no testimony in his defense. The court found that Appellant acted with malice when he shot Pierce but found reasonable doubt on whether he had a specific intent to kill. The court acquitted Appellant of attempted murder and convicted him of aggravated assault, possessing a firearm though prohibited and other offenses.

Appellant entered a negotiated guilty plea to forgery in another case, and the court sentenced him on both the forgery case and the present case. After determining that the sentencing guidelines set out a standard range of 90-108 months, the court heard argument from the defense and Commonwealth and allocution from Appellant. The court found several mitigating factors, such as Appellant's relatively advanced age compared to other criminals[2] and his learning disability and PTSD. N.T., 12/1/16, at 39-40. The court determined, however, that aggravating factors outweighed the mitigating factors, particularly the fact that Appellant fired his gun while children were in harm's way. The court imposed consecutive terms of 10—20 years' imprisonment for aggravated assault, 5—10 years' imprisonment for persons not to possess firearms and five years' consecutive probation, with

---

[2] Appellant was fifty years old at the time of sentencing.

conditions, for possessing an instrument of crime. The court ordered Appellant to serve his aggregate sentence concurrently with a term of 6—23 months' imprisonment for forgery. The court also directed that Appellant receive treatment for mental health and substance abuse problems as well as vocational, anger management and life skills training.

Appellant filed a post-sentence motion for reconsideration of sentence, arguing that the trial court "did not properly credit all of the evidence and arguments in support of mitigation," "placed undue emphasis on many of [his] arrests, which did not always lead to convictions," and erred by "concluding that [his] criminal history underestimated his culpability" and that the consecutive sentence terms were "unduly harsh." Appellant's Motion for Reconsideration of Sentence, ¶¶ 3-5. The court denied this motion, and Appellant filed a timely appeal.

On direct appeal, appellate counsel raised objections to police officers' testimony during trial but did not challenge the discretionary aspects of Appellant's sentence. On February 27, 2018, this Court affirmed Appellant's judgments of sentence. ***Commonwealth v. Williams***, 259 EDA 2017 (Pa. Super., filed February 27, 2018). On September 4, 2018, the Supreme Court declined Appellant's petition for allowance of appeal.

Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed a "no merit" letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.

Super. 1988), and a motion to withdraw as counsel. On January 22, 2019, the PCRA court issued a notice of intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant then rehired counsel who had represented him at trial and sentencing, and on February 8, 2019, counsel filed an amended PCRA petition alleging that direct appeal counsel provided ineffective assistance by failing to challenge the discretionary aspects of Appellant's sentence. The Commonwealth filed a motion to dismiss, and counsel filed a response asserting that direct appeal counsel failed to review the sentencing record and "should have challenged the sufficiency of the record used by the Court to justify a sentence within the aggravated range of the guidelines." Appellant's Response To Commonwealth's Motion To Dismiss, at 2. On August 2, 2019, the PCRA court issued a notice of intent to dismiss Appellant's amended petition without a hearing. On August 30, 2019, the PCRA court dismissed Appellant's amended petition, stating that the record provided ample support for Appellant's sentence. This timely appeal followed. On October 18, 2019, in lieu of an opinion, the PCRA court filed a letter to this Court incorporating its August 30, 2019 order by reference.

Appellant raises a single issue in this appeal: "Did the PCRA court commit an abuse of discretion by ruling that appellate counsel was not ineffective for failing to challenge the discretionary aspects of the sentence imposed on Appellant on appeal?" Appellant's Brief at 3. Claims that counsel was ineffective for failing to challenge the discretionary aspects of sentencing

are cognizable under the PCRA. ***Commonwealth v. Sarvey***, 199 A.3d 436, 455 (Pa. Super. 2018).

To obtain relief on a claim of ineffective assistance of counsel, Appellant must prove that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his actions or failure to act; and (3) the petitioner was prejudiced by counsel's deficient performance such that there is a reasonable probability that the result of the proceeding would have been different absent counsel's error or omission. ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987). A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009). Counsel is presumed to have rendered effective assistance. ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1117 (Pa. 2012).

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." ***Id.*** One component of this test is whether the defendant's challenge to the discretionary aspects of a sentence presents a substantial question. ***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013). Here, Appellant argues that the trial court imposed an excessive sentence without

considering several mitigating factors. Had counsel raised this argument on direct appeal, this would have presented a substantial question. **Commonwealth v. Perry**, 883 A.2d 599, 602 (Pa. Super. 2005) (excessive sentence claim, in conjunction with assertion that court did not consider mitigating factors, raised a substantial question). Accordingly, we will examine whether Appellant satisfies the three-prong test for ineffectiveness.

Appellant's argument lacks merit. Although the court sentenced Appellant in the aggravated range of the guidelines for aggravated assault and made this sentence consecutive to Appellant's sentence for persons not to possess firearms, the court explicitly took mitigating factors into account, such as Appellant's learning disability and PTSD and his relatively advanced age. Appellant did not identify any other mitigating factors in his original or amended PCRA petitions.[3] Further, the court ruled that the mitigating factors it identified on the record were outweighed by two aggravating factors. Appellant's prior record score "grossly underrepresent[ed] [his] criminal history, which is extensive, aside from showing a number of alias names, Social Security numbers, and date of births, shows a remarkable consistency for robbery, aggravated assault and burglary arrests." **Id.** at 40. Next, a young child was near the victim as Appellant fired multiple times. **Id.**

---

[3] In his appellate brief, Appellant claims that his "health" and his "business" are additional mitigating factors, **id.** at 15, but he fails to provide any further information on these subjects. Thus, we find these assertions unpersuasive.

Appellant's tendency towards violent crime and the fact that he put a child in harm's way supported an aggravated range sentence for aggravated assault and a consecutive sentence. *Commonwealth v. Bonds*, 890 A.2d 414, 419 (Pa. Super. 2005) (aggravated range sentence justified because physical brutality during robbery exceeded conduct contemplated for standard range robbery sentence).

We consider Appellant's sentence to be well within the court's discretion. Appellant seriously wounded the victim by shooting directly at him several times at close range with a gun he was prohibited from possessing as a convicted felon, on a street with many other people in harm's way and a young child near the victim. Thus, Appellant's argument lacks merit, and therefore cannot pass muster under the first of the three *Pierce* factors. His claim of ineffective assistance fails.

For these reasons, the PCRA court properly dismissed Appellant's amended PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/11/2020