J-S39003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY DINGLE | : | |
| | : | |
| Appellant | : | No. 2455 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 12, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0001917-2023

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.: **FILED FEBRUARY 26, 2026**

Appellant, Anthony Dingle, seeks review of the judgment of sentence entered by the Court of Common Pleas of Philadelphia County (trial court). In 2024, Appellant was found guilty of possession of a weapon by a prohibited person (18 Pa.C.S.A. § 6105(a)); aggravated assault; carrying a firearm without a license; carrying a firearm on the streets of Philadelphia; possession of an instrument of crime; simple assault; and recklessly endangering another person. He was sentenced to an aggregate prison term of 220 to 440 months. Appellant now argues that his conviction as to the charge of possession of a firearm by a prohibited person must be vacated because, as applied to him, section 6105 violates his constitutional right to bear arms; he contends further that the aggravated portions of his sentence are manifestly excessive due to the trial court's consideration of improper sentencing factors. Finding no merit in these claims, we affirm.

The underlying case facts have been aptly summarized by the trial court as follows:

> At trial, the Commonwealth presented the testimony of Officer Matthew Langan, Officer Brandon Moore, Detective Michael Kimmel, and Detective Eric Cohn, all from the Philadelphia Police Department. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.
>
> At approximately 9:00 a.m. on December 22, 2022, videos from multiple surveillance cameras show [Appellant] driving his white Chevrolet Impala into the parking lot of a Dunkin' Donuts located at the 5500 block of Chestnut Street in Philadelphia. After entering the parking lot, [Appellant] drove into the drive-thru lane, getting in line behind a white Jeep SUV. However, when the Jeep failed to move forward in line as other cars pulled up toward the drive-thru window, [Appellant] drove his car around the Jeep, cutting in front of it. Then, as [Appellant] approached the drive-thru speaker post and menu, the Jeep lurched forward and bumped the back of [Appellant's] car, pushing [it] forward.
>
> Moments after the Jeep hit the rear of [Appellant's] car, [Appellant] exited his car brandishing a black handgun with an extended magazine. High-resolution video from a camera positioned at the drive-thru speaker shows clear images of [Appellant's] face as [he] exited his car with the gun. [Appellant] then proceeded to fire his gun 13 times in the direction of the Jeep, which quickly backed out of the parking lot and drove away. [Appellant] returned to his car, backed out of the drive-thru lane, and exited the parking lot, traveling in the same direction as the Jeep.
>
> When police later responded to the scene, officers found and recovered 13 fired cartridge casings ("FCCs"). All of the FCCs were for .40 caliber bullets. Based upon a review of the video surveillance footage, police identified the license plate number for [Appellant's] Chevrolet Impala, which was registered in [Appellant's] name.
>
> Officer Brandon Moore had previously seen [Appellant] driving the same car in March 2022, when Officer Moore had pulled over

[Appellant] for running a stop sign. [Appellant] was not licensed to carry a firearm at the time of the shooting. [Appellant] was also prohibited from possessing a firearm at that time due to his prior conviction for possession with intent to deliver a controlled substance.

Trial Court 1925(a) Opinion, 11/18/2024, at 2-3 (internal citations omitted).

Prior to trial, Appellant filed a motion to dismiss the charge of possession of a weapon by a prohibited person, arguing that, as applied to him, the statutory firearm restriction of section 6105 violated his constitutional right to bear arms. More specifically, Appellant contended that that the ban was unconstitutional because the predicate offense which triggered the restriction was a non-violent crime – possession of a controlled substance with intent to deliver (PWID), 35 Pa.C.S.A. § 780-113(a)(30).

The trial court denied Appellant's motion, and after the case proceeded to trial, he was convicted and sentenced as outlined above. At the sentencing hearing, the trial court stated on the record that Appellant's prior conviction in 2012, for unlawfully possessing a firearm, would be taken into account as an aggravating factor. *See* N.T. Sentencing Hearing, 4/12/2024, at 17. The trial court also expressly considered Appellant's "conduct throughout the proceedings," and his "failure to accept any responsibility for his offenses." *Id*., at 21. With respect to Appellant's rehabilitative needs, the trial court acknowledged that Appellant had long struggled with maintaining his mental health. *See id*., at 19–20.

As to the counts of aggravated assault and unlawful possession of a firearm (pursuant to section 6105), the trial court imposed consecutive prison

terms of 102 to 204 months, both of which were in the aggravated range of the statutory sentencing guidelines; as to the count of possessing an instrument of a crime, the trial court imposed an additional consecutive term of 16-32 months. The aggregate term was 220 to 440 months.

After sentencing, Appellant again raised his constitutional challenge to section 6105 in a post-sentence motion, which was denied. Appellant timely filed a notice of appeal, and he now raises two issues for our consideration:

> 1. Did the trial court err when it denied [Appellant's] Motion to Dismiss?
>
> 2. Did the trial court err by imposing a manifestly excessive and unreasonable sentence?

Appellant's Brief, at 4 (suggested answers omitted).

Appellant's first claim is that section 6105 violates his right to bear arms, as guaranteed by the Second Amendment to the United States Constitution and the Pennsylvania Constitution.[1] He argues, essentially, that the statute's restriction is only constitutional when the qualifying offenses are violent crimes, and that his own qualifying offense, PWID, was non-violent in nature. *See id*., at 9-14.

---

[1] The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Article I, section 21 of the Pennsylvania Constitution provides that "[t]he right of the citizens to bear arms in defense of themselves and the State shall not be questioned." Appellant does not parse his arguments with respect to state and federal constitutional law.

Under subsection 6105e(a), persons are prohibited from possessing firearms if they have been convicted of any offenses enumerated in subsection 6105(b), or if they meet the criteria in subsection 6105(c). **See** 18 Pa.C.S.A. § 6105(a)(1). Subsection 6105(c), in turn, provides that persons are subject to the statute's firearm restriction if they have been convicted of an offense under the Controlled Substance, Drug, Device and Cosmetic Act (35 P.S. §§ 780-1 – 780-144), or any equivalent federal or state statute which is punishable by a prison term of over two years. **See** 18 Pa.C.S.A. § 6105(c)(2).

Here, there is no dispute that Appellant was convicted of a qualifying violation of the Controlled Substances Act (PWID) prior to his arrest in the present case. Under our recent controlling precedent, Appellant's conviction under section 6105 did not violate his constitutional right to bear arms.

Recently, this Court decided **Commonwealth v. Randolph**, 343 A.3d 1248 (Pa. Super. 2025), a strongly analogous case in which the defendant also qualified for a statutory firearm ban by committing the offense of PWID. After the defendant in **Randolph** was found guilty of violating section 6105, he argued (like Appellant here) that the statute was unconstitutional, as applied to him, because his qualifying offense was a non-violent crime.

The **Randolph** Court rejected that constitutional challenge, beginning its analysis with a review of several decisions by the United States Supreme Court which addressed similar firearm restrictions. **See Randolph**, 343 A.3d at 1251-1255 (citing **United States v. Rahimi**, 602 U.S. 680, 698 (2024);

- 5 -

*New York State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1 (2022); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008)).

The *Randolph* Court then discussed a number of its own recent decisions on that same issue. *See Randolph*, 343 A.3d at 1254-1255 (citing *Commonwealth v. McIntyre*, 333 A.3d 417 (Pa. Super. 2025); *Commonwealth v. Jenkins*, 328 A.3d 1076 (Pa. Super. 2024), *appeal granted*, No. 18 MAL 2025 (Pa. July 8, 2025); *Farmer*, 329 A.3d 449, *appeal granted*, No. 44 MAL 2025 (Pa. July 8, 2025)).

To summarize, the Court explained that the as-applied constitutional challenge to section 6105 involves the two-part test set forth by the United States Supreme Court in *Bruen*:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Randolph*, 343 A.3d at 1252 (quoting *Bruen*, 597 U.S. at 24).

A prohibition on a person's right to bear arms will comport with the "historical tradition of firearm regulation" where that person "poses a clear threat of physical violence to another[.]" *Farmer*, 329 A.3d at 454 (quoting *Rahimi*, 602 U.S. at 698).

As to the first part of the ***Bruen*** test, the ***Randolph*** Court held that the defendant was indeed "one of the people" protected by the Second Amendment, "despite having prior felony convictions." ***Randolph***, 343 A.3d at 1256.

As to the second part of the ***Bruen*** test, the ***Randolph*** Court held that the Commonwealth had carried its burden of showing "that the prohibition imposed on [the defendant] by [section] 6105 'is consistent with the Nation's historical tradition of firearm regulation.'" ***Id***., at 1258 (quoting ***Bruen***, 597 U.S. at 24). The ***Randolph*** Court stressed that this conclusion was in line with federal authorities which have linked gun violence to the illegal distribution of controlled substances:

> [O]ur holding aligns with the federal court cases . . . that have addressed this nearly identical issue and concluded that the dangerous combination of drugs and firearms permits the government's regulation. ***See*** *Amicus* brief at 25-28 (citing, by way of example, ***Jackson***, ***United States v. Birry***, 2024 WL 3540989 (M.D. Pa. 2024), and ***United States v. Daniels***, 2024 WL 4906482 (E.D. Pa. 2024)).
>
> In reaching this decision, we necessarily conclude that Appellant's arguments to the contrary are unpersuasive. Although he devotes a significant portion of his brief to describing that PWID is not a "crime of violence," that contention is unavailing since "crime of violence" is not the term utilized by the U.S. Supreme Court throughout its recent case law.

***Id***., at 1259; ***see also Commonwealth v. Ali***, 149 A.3d 29, 38 (Pa. 2016) ("The general community effects of illegal drug distribution are well-known, including effects (sometimes fatal) upon abusers, attendant property crimes

by certain of those suffering from addiction, and violence associated with certain drugs or manners of distribution.").

*Randolph* controls our disposition of Appellant's first claim. Appellant is one of the people protected by the Second Amendment; additionally, the government has justified its regulation of Appellant's right to bear arms, having demonstrated that it is consistent with this country's historical tradition of firearm regulation. Accordingly, we find that, as applied to Appellant, the firearm restriction does not violate his constitutional right to bear arms under state or federal law. *See Randolph*, 343 A.3d at 1259; *see also Commonwealth v. Purdie*, No. 2651 EDA 2024 (Pa. Super. filed December 15, 2025) (unpublished memorandum) (affirming conviction under 6105 because, as in *Randolph*, the defendant's prior drug possession convictions made him a "credible threat" to the public safety, making the statutory prohibition constitutional, as applied).[2]

---

[2] Appellant briefly suggests that his conviction under section 6105 violates his right to bear arms, as guaranteed by article I, section 21 of the Pennsylvania Constitution. *See* Appellant's Brief, at 14. However, this Court has held in recent cases that the Pennsylvania Constitution provides no more protection of an individual's right to bear arms than does the United States Constitution. *See Commonwealth v. Mead*, 326 A.3d 1006, 1015 (Pa. Super. 2024) ("Article I, Section 21 therefore does not provide greater protection of the right to bear arms than the Second Amendment"); *see also Commonwealth v. Nieves Crespo*, No. 980 MDA 2023 (Pa. Super. filed May 17, 2024) (unpublished memorandum) ("[W]hen confronted with a claim that a statute is violative of both the Second Amendment of the United States Constitution and Article I, Section 21 of Pennsylvania Constitution, Pennsylvania courts engage in a singular analysis, suggesting that both

*(Footnote Continued Next Page)*

Appellant's second claim is that the trial court abused its discretion by imposing a manifestly excessive sentence. This claim has two sub-parts. First, Appellant contends that the trial court improperly relied on his prior conviction for unlawful weapon possession to justify a sentence in the aggravated range, despite that this prior conviction had already been factored into his prior record score. *See* Appellant's Brief, at 16. Next, Appellant argues that the trial court improperly considered his erratic conduct during allocution as an aggravating factor. *See id*, at 17. Each of these grounds will be considered in turn below.

We begin by noting that an appellant is not entitled to merits review of challenges to the discretionary aspects of a sentence. *See Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006). Rather, an appellant must invoke this Court's jurisdiction to consider the merits of such claims by satisfying a four-part test:

> (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

---

provisions offer the same protection"). Thus, as the Pennsylvania Constitution provides no further protection than the Second Amendment, Appellant's claim has no merit.

*Id*. (quoting ***Commonwealth v. Hyland***, 875 A.2d 1175, 1183 (Pa. Super. 2005)).

A substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

"An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate 'the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.'" ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005) (quoting ***Commonwealth v. Mouzon***, 812 A.2d 617, 627 (Pa. 2002)).

Here, Appellant timely filed a post-sentence motion in which he argued that the sentence he received was excessive and based on impermissible factors. He also timely filed a notice of appeal. Although Appellant has not included a Rule 2119(f) statement in his brief, the Commonwealth has not objected to this procedural defect, and "in the absence of any objection from the Commonwealth, we are empowered to review claims that otherwise fail to comply with Rule 2119(f)[.]" ***Commonwealth v. Bonds***, 890 A.2d 414, 418 (Pa. Super. 2005). Moreover, the absence of a Rule 2119(f) statement does

not impede our ability to assess Appellant's claims. Finally, as acknowledged by the Commonwealth, Appellant has raised a substantial question. **See** Appellee's Brief, at 15 (citing **Commonwealth v. Downing**, 990 A.2d 788, 792 (Pa. Super. 2010)).

Having determined that Appellant has successfully invoked our jurisdiction to consider the discretionary aspects of his sentence, we now proceed to review the merits of his claims.

"It is impermissible for a court to consider factors already included within the sentencing guidelines as the *sole* reason for increasing or decreasing a sentence to the aggravated or mitigated range[.]" **Commonwealth v. Shugars**, 895 A.2d 1270, 1275 (Pa. Super. 2006) (emphasis added). However, it is within the trial court's discretion to consider a defendant's prior "conviction history and other factors already included in the guidelines to supplement other extraneous sentencing information." **Id**.

When fashioning a criminal defendant's individualized sentence, courts must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Weighing these factors is within the province of the trial court, and a reviewing court may not reweigh those factors on appeal. **See Commonwealth v. Walls**, 926 A.2d 957, 966 (Pa. 2007).

When the trial court imposes a sentence that deviates from the guidelines, it must explain how "the particular facts of the case in question are distinguishable from the typical case of that same offense." *Commonwealth v. Eby*, 784 A.2d 204, 208–09 (Pa. Super. 2001). A sentencing court is not required to explain its sentencing philosophy at length; rather, "the record as a whole must reflect [its] consideration of the facts of the crime and [defendant's] character." *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010).

At the sentencing in the present case, the trial court imposed Appellant's aggravated sentence after taking into account the fact that, in 2012, Appellant had been convicted of unlawful possession of a weapon. The record reflects, however, that Appellant's prior conviction was not the only sentencing factor considered by the trial court.

The trial court correctly calculated the guideline ranges as 78–90 months, plus or minus 12 months as to the count of aggravated assault; 72–90 months, plus or minus 12 months for unlawful possession of a firearm (section 6105); and six to 16 months, plus or minus three months for possession of an instrument of a crime. *See* N.T. Sentencing Hearing, 4/12/2024, at 3–4.

The trial court imposed a prison term of 102–204 months on the aggravated assault count; a term of 102–204 months on the weapon possession count; and 16–32 months on the count of possession of an

instrument of a crime. Each term was set to run consecutively. Appellant's sentences for aggravated assault and unlawful possession of a firearm were within the aggravated range of the statutory sentencing guidelines, and his sentence for possessing an instrument of a crime was within the standard range of the guidelines.

In imposing sentences within the aggravated guidelines range, the trial court explained on the record that it had considered the circumstances of the present offense. In short, Appellant was provoked by another driver while waiting in a drive-thru of a busy donut shop. Appellant stepped out of his vehicle and discharged a firearm over a dozen times, posing an extreme risk to numerous bystanders. *See id*., at 4/12/2024, at 16–19. One of the bystanders was a small child. *See id*., at 17. The trial court viewed the prior incident with respect to Appellant's pattern of posing a threat to the community, as well as his extreme indifference to the safety of others. *See id*., at 17-20.

The trial court further considered Appellant's rehabilitative needs, failure to take responsibility, risk of recidivism, and lack of remorse. *See id*., at 18–23. The trial court also discussed Appellant's mental health in depth. *See* N.T. Sentencing Hearing, 4/12/2024, at 16-20. The trial court reviewed Appellant's mental health evaluation and pre-sentence investigation report, and stressed that he "has suffered through mental health struggles." *Id*., at 20.

However, the trial court balanced those potentially mitigating factors against the many aggravating factors discussed above. *See id*., at 20-22. With respect to Appellant's behavior, the trial court found that he appeared to present a high risk of recidivism due to his "conduct throughout the proceedings," and failure at any point to "accept any responsibility for his offenses." *Id*., at 21. Moreover, the trial court noted that Appellant had previously failed to make progress during supervision, making it less likely that supervision would be successful in the future. *See id*., at 20-21.

Thus, because the trial court gave additional reasons for imposing Appellant's sentence beyond the fact that he had been previously convicted of a weapon possession charge, the trial court did not impermissibly rely upon that prior conviction when imposing a sentence in the aggravated range.

Appellant final sentencing claim is that the trial court improperly found that his conduct during allocation indicated a heightened risk of recidivism, justifying a sentence in the aggravated range. *See* Appellant's Brief, at 17. During the allocation, Appellant claimed that he was "under duress," demanded that everyone in the courtroom be sworn in, and attempted to appoint the trial court as his "trustee." N.T. Sentencing Hearing, 4/12/2024, at 14–16.

The trial court then viewed Appellant's "demeanor and defiant conduct" as an indication that he lacked remorse. *See* Trial Court 1925(a) Opinion, 11/18/2024, at 11. Appellant contends that the trial court improperly

construed his behavior as a justification for an aggravated sentence when it was in fact the inadvertent symptom of mental illness. *See* Appellant's Brief, at 17.

"The trial court is vested with broad discretion in determining the defendant's sentence since the court is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Begley*, 780 A.2d 605, 643 (Pa. 2001). "[L]lack of remorse is an appropriate sentencing consideration." *Commonwealth v. Summers*, 245 A.3d 686, 695 (Pa. Super. 2021); *see also Commonwealth v. Colon*, 102 A.3d 1033, 1043 (Pa. Super. 2014) (same).

Here, in context, the record shows that the trial court was fully appraised of Appellant's mental health history, and it was treated as a mitigating factor. The trial court then acted within its discretion by viewing Appellant's conduct as at least in part reflective of his character, lack of remorse, defiance, or indifference. *See Begley*, 780 A.2d at 643. Again, the trial court was in the best position to assess Appellant's conduct and demeanor, and whether it was attributable to mental illness, or to some other underlying factor that would properly justify a sentence in the aggravated range. This Court, now being limited to the record on appeal, cannot second-guess such a determination. Thus, we find that no relief is due as to this discretionary aspect of Appellant's sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/26/2026