J-S15029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN R. MAJOR, JR. | : | |
| | : | |
| Appellant | : | No. 1317 WDA 2020 |

Appeal from the Order Entered November 19, 2020
In the Court of Common Pleas of Allegheny County Criminal Division
at No(s):  CP-02-CR-0005251-2011

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED:  July 14, 2021**

John R. Major, Jr. (Appellant) appeals *pro se* from the order granting his request to proceed *pro se*, vacating the June 9, 2020[1] order dismissing his PCRA petition as untimely, and denying the petition on merits.  We affirm in part, reverse in part, vacate in part, and remand.

The underlying facts are fully set forth in this Court's decision on direct appeal.  *See Commonwealth v. Major*, 2014 WL 10965205 (Pa. Super. Apr. 23, 2014) (unpublished memorandum).  Briefly, on March 6, 2012, a jury

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The PCRA court signed the order on May 9, 2020, but it was not filed until June 9, 2020.

convicted Appellant of involuntary deviate sexual intercourse[2] and related crimes. The charges arose from Appellant's sexual abuse of his fourteen-year-old daughter over a period of nearly two years, and an eight-hour armed standoff between Appellant and police, during which he held his disabled seven-year-old son hostage. On June 11, 2012, the trial court sentenced Appellant to an aggregate 26 - 52 years in prison. At sentencing, the court noted Appellant had undergone a Sexually Violent Predator (SVP) assessment, after which the Pennsylvania Sexual Offender Assessment Board (SOAB) recommended Appellant be designated an SVP. N.T., 6/11/12, at 6. However, at Appellant's request, the court bifurcated the proceedings and postponed the SVP hearing for Appellant to obtain an independent assessment. *Id.* at 8. The record indicates no further action was taken in this regard and an SVP hearing did not occur. N.T., 8/24-25/17, at 155. Thus, the trial court never determined whether Appellant was an SVP. Nonetheless, Appellant filed an appeal, and on April 23, 2014, this Court affirmed his judgment of sentence. *Major*, *supra*. Appellant did not seek allowance of appeal with the Pennsylvania Supreme Court.

### PCRA Procedural History

On April 3, 2015, Appellant *pro se* filed a PCRA petition. The procedural history that followed is convoluted. Ultimately, the PCRA court denied all of

---

[2] 18 Pa.C.S.A. § 3123.

Appellant's claims except those challenging the legality of sentence pursuant to the Pennsylvania Supreme Court's decision in *Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016). On August 25, 2017, the court resentenced Appellant, again to 26 - 52 years in prison. During resentencing, the court emphasized it was not sentencing Appellant to any mandatory minimums. N.T., 8/25/17, at 152-54. Following a discussion about the Supreme Court's decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), the court informed Appellant he would be "a lifetime Megan's Law registrant." *Id.* at 161. Appellant did not appeal.

On November 1, 2017, Appellant filed what the trial court deemed an untimely post-sentence motion. The court dismissed the motion on November 15, 2017. Appellant appealed. On October 15, 2018, this Court found the trial court erred in treating Appellant's filing as an untimely post-sentence motion rather than a timely PCRA petition. *Commonwealth v. Major*, 2018 WL 4957913, at *3 (Pa. Super. Oct. 15, 2018) (unpublished memorandum). We noted that Appellant had not appealed from the August 28, 2017 order denying his non-sentencing PCRA claims, and explained:

> any non-sentencing/PCRA issues related to the August 28th Order have been waived. The only viable issues are sentencing issues related to the August 25, 2017 resentencing which, as we have explained, are subject to the PCRA.
>
> Accordingly, we vacate the order denying [Appellant's] post-sentence motion and remand for the appointment of counsel (should [Appellant] desire) and further proceedings under the PCRA consistent with this memorandum.

J-S15029-21

*Id.* at *5.

On October 22, 2019, in response to this Court's decision, the PCRA court issued an order deeming Appellant's November 1, 2017 pleading to be a PCRA petition, and providing Appellant time to either file an amended petition, indicate he would not file one, or request appointment of counsel. After requesting and receiving multiple extensions of time, Appellant, *pro se* filed an amended PCRA petition on January 22, 2020. On February 19, 2020, the court filed notice of intent to dismiss pursuant to Pa.R.Crim.P. 907, stating, "after a thorough review of the record, the [c]ourt finds the claims presented are without merit." Notice of Intention to Dismiss, 2/19/20.

On March 25, 2020,[3] Appellant moved to stay the PCRA proceedings pending resolution of his petition for a writ of *habeas corpus* in the United States District Court for the Western District of Pennsylvania. Motion for Stay of PCRA Proceedings, 3/25/20, at 2-4 (unnumbered). The PCRA court denied the motion on May 1, 2020.[4] On June 9, 2020, the PCRA court issued an order stating "[Appellant's] Post-Conviction Relief Act Petition is untimely filed and exceptions to the timeliness requirement have not been met." Order of Court, 6/9/20.

_____

[3] The motion is signed and dated March 10, 2020.

[4] On March 16, 2020, United States Magistrate Judge Maureen P. Kelly stayed Appellant's federal proceedings pending completion the instant matter. ***Major v. Gilmore***, 2020 WL 8996838, at *4 (W.D.Pa. Mar. 16, 2020) (unpublished order).

- 4 -

On June 24, 2020, Appellant filed a "Motion to Vacate Order," in which he correctly asserted that his PCRA petition was timely and the dismissal was improper. Motion to Vacate Order, 6/24/20, at 1-2. The PCRA court denied the motion to vacate on July 30, 2020. Appellant filed a notice of appeal at 884 WDA 2020, which is a companion to this case.[5]

On November 10, 2020, the PCRA court held a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). On November 19, 2020, the court entered an order permitting Appellant to proceed *pro se*; *sua sponte* vacated its June 9, 2020 order dismissing Appellant's PCRA petition as untimely; and dismissed Appellant's amended PCRA petition based on Appellant's claims being "without arguable merit." Order, 11/19/20, at 4. This appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925(b).

Appellant raises the following issues:

I. DID THE TRIAL COURT ERROR [*sic*] SHOWING BIAS AND PREJUDICE, WHEN SHE DENIED THE APPELLANT'S MOTION TO VACATE AN ORDER THAT WAS FACTUALLY INCORRECT, ILLEGAL AND OUTDATED; AND WAS NOT IN FACT SIGNED BY THE TRIAL JUDGE ASSIGNED TO THIS CASE?

II. SHOULD THE TRIAL COURT RECUSE HERSELF PROM THIS CASE, DUE TO CONTINUED BIAS AND PREJUDICE THAT HAS LED TO IRREGULARITIES, MISTAKES, MIS-REPRESENTATIONS OF THE FACTS, A FAILURE TO ACT IN A FAIR AND HONEST MANNER, WHICH HAS CAUSED THE APPELLANT TO SUFFER A WILLFUL

---

[5] We issued a judgment order quashing the appeal in *Commonwealth v. Major*, 884 WDA 2020.

DENIAL OF DUE PROCESS BY THE TRIAL COURT, THUS CAUSING [*sic*] INTO QUESTION THE INTEGRITY OF THE COURT ITSELF?

III. DID THE TRIAL COURT SHOW BIAS AND PREJUDICE AT TRIAL SENTENCING AND RESENTENCING; WHEN IT SENTENCED THE APPELLANT TO A SENTENCE THAT WAS UNREASONABLY EXCESSIVE, VIOLATED THE EIGTH [*sic*] AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT, AND WAS TANTAMOUNT TO A LIFE SENTENCE?

IV. DID THE TRIAL COURT ERROR [*sic*] WHEN IT RESENTENCED THE APPPELLANT TO MEGAN'S LAW III; AFTER MEGAN'S LAW III AND SORNA WERE DEEMED TO BE UN-CONSTITUTIONAL?

Appellant's Brief at 4.

We begin by addressing jurisdiction. Pennsylvania law provides:

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, **if no appeal from such order has been taken or allowed**.

42 Pa.C.S.A. § 5505 (emphasis added). The Pennsylvania Rules of Appellate

Procedure provide:

**(a) General rule.**--Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

**(b) Authority of a trial court or other government unit after appeal.**--After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

(1) Take such action as may be necessary to preserve the *status quo*, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed, and transmitted, grant leave to appeal *in forma pauperis*, grant *supersedeas*, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

Pa.R.A.P. 1701(a) and (b)(1).

Here, the PCRA court vacated the June 9, 2020 order on November 19, 2020, outside the thirty-day period, and while the case was on appeal. Although this Court had ordered the PCRA court to conduct a **Grazier** hearing, we retained jurisdiction "pending compliance with this order." Order, 10/26/20. Thus, the PCRA court did not have jurisdiction to vacate the June 9, 2020 order under 42 Pa.C.S.A. § 5505, and it is not clear whether there were "formal errors in papers" as stated in Pa.R.A.P. 1701.

However, there are exceptions to the general rule that an appeal divests a trial court of jurisdiction. One exception is a trial court's "inherent power" to correct "patent and obvious errors." **Commonwealth v. Hoover**, 231 A.3d 785, 792 (Pa. 2020) (Opinion Announcing Judgment of the Court) (quoting **Commonwealth v. Holmes**, 933 A.2d 57, 67 (Pa. 2007)); **see also Commonwealth v. Hansley**, 47 A.3d 1180, 1189 (Pa. 2012) ("Thus, under limited circumstances, even where the court would normally be divested of jurisdiction, a court may have the power to correct patent and obvious mistakes."). This power may be exercised in circumstances even after a notice of appeal has been filed to correct "a patent defect or mistake in the record." **Commonwealth v. Klein**, 781 A.2d 1133, 1135 (Pa. 2001).

The June 9, 2020 order dismissing Appellant's PCRA as untimely contained a patent and obvious error, as this Court had already determined that the PCRA petition was timely. **See Commonwealth v. Major**, 2018 WL

4957913, at *4. Moreover, on remand, the PCRA court treated the petition as timely, permitting Appellant to amend, and then finding the petition to lack merit. While the PCRA court has not explained the confusion,[6] it appears the court had the "inherent power to correct." **Klein**, 781 A.2d at 1135 (citations omitted). Accordingly, we conclude the court had jurisdiction to vacate the June 9, 2020 order and enter the November 19, 2020 order. We therefore address Appellant's issues.

It is well-settled that in reviewing the denial of PCRA relief, "we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (citations omitted). "To be entitled to PCRA relief, [an] appellant must establish, by a preponderance of the evidence, [that] his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.A. § 9543(a)(2)." **Id.**

"[A]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant." **Commonwealth v. Adams**, 882 A.2d 496, 498 (Pa. Super. 2005) (citation omitted). "To the contrary, any person choosing to represent himself

---

[6] The PCRA court has not explained why the error was not rectified within 30 days, or why it denied the motion to vacate when Appellant identified the error. Were we to find the PCRA court lacked jurisdiction to vacate the June 9, 2020 order, Appellant would be adversely impacted as a result of the breakdown in the process of the PCRA court.

in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *Id.* Instantly, Appellant's arguments are rambling, repetitive, and for the most part, lacking citation to pertinent legal authority. However, we address Appellant's issues as best we discern them.

In his first issue, Appellant claims the PCRA court erred in denying his motion to vacate. Appellant's Brief at 14-16. The Commonwealth correctly observes this issue is moot because the PCRA court vacated the June 9, 2020 order in its November 19, 2020 order. Commonwealth Brief at 16-17. We agree. *See Commonwealth v. Nava*, 966 A.2d 630, 633 (Pa. Super. 2009) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect."); *see also In re Gross*, 382 A.2d 116, 119 (Pa. 1978) ("[A] legal question can become moot on appeal as the result of an intervening change in the facts of the case.").

In his second issue, Appellant contends:

> . . . the trial court should recuse herself (Judge Rangos) due to continued bias and prejudice. This had led to irregularities, blatant and willful mistakes, deliberate misrepresentation of the facts, and a failure to act in a fair and honest manner. This had caused the Appellant to suffer a willful denial of due process by the trial court, thus calling into question the integrity of the court itself[.]

Appellant's Brief at 17. We disagree.

> Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do

so recognizing that the judge himself is best qualified to gauge his ability to preside impartially.

> As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make.

Accordingly, a party seeking to compel a judge's disqualification must produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially.

*Commonwealth v. Bonds*, 890 A.2d 414, 418–19 (Pa. Super. 2005) (citations omitted). "Adverse rulings alone do not, however, establish the requisite bias warranting recusal, especially where the rulings are legally proper." *Commonwealth v. Abu–Jamal*, 720 A.2d 79, 90 (Pa. 1998).

To the extent Appellant argues judicial bias during trial and his original sentencing, those claims are waived because Appellant could have raised them on direct appeal, but did not. *See* 42 Pa.C.S.A. § 9544(b).

We have reviewed Appellant's remaining contentions, which focus on resentencing, and evince a litany of complaints based on Appellant's mistaken belief that his status as an inmate and *pro se* litigant excuses him from complying with court rules. Appellant also complains of actions by entities, such as the District Attorney's Office and Department of Corrections, which

operate independently of the PCRA court. In addition, Appellant misapprehends the scope of this Court's prior remand decision, and criticizes the court's adverse rulings. *See* Appellant's Brief at 17-21. Appellant does not cite —and we have not found — anything in the record showing bias on the part of Judge Rangos. Because Appellant has not produced "evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially," *Bond*, 890 A.2d at 419, his second issue lacks merit.

In his third issue, Appellant avers "the trial court show[ed] bias and prejudice at trial sentence and resentencing when it sentenced the Appellant to a sentence that was unreasonable, excessive, violated the Eighth Amendment prohibition against cruel and unusual punishment, and was tantamount to a life sentence." Appellant's Brief at 22.

To the extent that Appellant is challenging the discretionary aspects of his original sentence, that issue was previously litigated and rejected on direct appeal. *See Major*, *supra*, 2014 WL 10965205, at \*\*8-10. *See also* 42 Pa.C.S.A. § 9543(a)(3); *Commonwealth v. Spotz*, 47 A.3d 63, 101 (Pa. 2012) (issue previously litigated is not cognizable under PCRA). To the extent Appellant challenges the discretionary aspects of his sentence following resentencing, this claim is not cognizable under the PCRA. *See* 42 Pa.C.S.A. § 9543(a)(2)(i-viii).

Appellant also asserts his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. Appellant's Brief at 22-43. This Court has discussed the open question about whether Eighth Amendment sentencing challenges involve the discretionary aspects or legality of sentencing. We explained:

> there is no bright line rule establishing whether a challenge to a sentence, constitutional or otherwise, implicates the legal or discretionary aspects of that sentence. *See Commonwealth v. Spruill*, 622 Pa. 299, 80 A.3d 453, 460–461 (2013) (noting the Supreme Court's "experience with claims allegedly implicating sentence legality has not always been smooth" and noting the complexities involved in the issue). However, this Court has stated that "the term 'illegal sentence' is a term of art that our courts apply narrowly, to a relatively small class of cases." *Commonwealth v. Robin*son, 931 A.2d 15, 21 (Pa. Super. 2007).
>
> "Legality of sentence issues occur generally either: (1) when a trial court's traditional authority to use discretion in the act of sentencing is somehow affected and/or (2) when the sentence imposed is patently inconsistent with the sentencing parameter set forth by the General Assembly." [*Commonwealth v.*] *Schutzues*, 54 A.3d [86,] 92 [Pa. Super. 2012] (quoting *Commonwealth v. Foster*, 609 Pa. 502, 17 A.3d 332, 342 (2011)). Most other challenges implicate the discretionary aspects of a sentence, "even though the claim may involve a legal question, a patently obvious mathematical error, or an issue of constitutional dimension." *Robinson*, 931 A.2d at 21 (finding that a claim of vindictiveness by the trial court when sentencing a defendant does not implicate the legality of the sentence). Indeed, where, as here, an appellant argues that the sentencing court exercised its discretion in a way that was harsh, unreasonable, or motivated by impermissible factors such as personal animus or revenge, those contentions "are the very hallmarks of a claim that implicates the discretionary aspects of a sentence." *Id.*

*Commonwealth v. Succi*, 173 A.3d 269, 284-85 (Pa. Super. 2017).

Appellant claims the PCRA court "showed bias and prejudice." Appellant's Brief at 23. He further contends his sentence was "clearly unreasonable and excessive as Appellant was only charged with statutory crimes . . . this case was not a case of rape, or any charges that alleged forcible compulsion, threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." *Id.* at 24. Appellant maintains the court imposed the sentence based on Appellant choosing "to defend himself against baseless allegations." *Id.* at 25. He then argues that the court failed to consider mitigating factors, including his zero prior record score; he also complains about his sentences being imposed consecutively. *Id.* at 26-33. These assertions do not implicate the legality of Appellant's sentence. *Robinson*, 931 A.2d at 21. Despite being cloaked as Eighth Amendment claims, they challenge the discretionary aspects sentence, which is not cognizable under the PCRA. *See Succi*, 173 A.3d at 285 (finding Eighth Amendment challenge to sentence waived where challenge implicated discretionary aspects of sentence rather than legality of sentence).

Even assuming *arguendo* that we were to consider this issue a challenge to the legality of sentence and cognizable under the PCRA, it would fail. "The Eighth Amendment does not require strict proportionality between the crime committed and the sentence imposed; rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Commonwealth*

*v. Baker*, 78 A.3d 1044, 1047 (Pa 2013). To determine if a sentence runs afoul of the Eighth Amendment, we must look to three factors:

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* (citation omitted). This Court "is not obligated to reach the second and third prongs of the [ ] test unless a threshold comparison of the crime committed and the sentence imposed leads to an interference of gross disproportionality." *Id.* at 1047.

Appellant does not and cannot argue that his sentence exceeded the statutory maximum. Also, Appellant downplays the seriousness of his crimes by claiming that his nearly two years of sexual abuse of the victim consisted only of "statutory offenses," Appellant's Brief at 24; that the victim "fabricated" her testimony, *id.* at 32; and that holding a young, disabled child hostage during an armed stand-off with police was a victimless crime because the child "slept through the entire events of that night, he had no idea that anything had happened, was not frightened." *Id.* at 30.

Given the facts, along with Appellant's lack of remorse or acceptance of responsibility for his crimes, we find Appellant failed to satisfy the first prong of the proportionality test. Even if cognizable in the context of the PCRA, Appellant has failed to show that his sentence is illegal and in violation of the Eighth Amendment. *See Succi*, 173 A.3d at 286 (finding sentence of 11½ to

28 years for non-violent fraud offenses did not violate Eighth Amendment even though appellant had no prior criminal record; none of the sentences exceeded the statutory maximum, there were no mitigating factors, and Appellant failed to show remorse). Appellant's third issue does not merit relief.

In his fourth and final issue, Appellant claims the court erred in resentencing him "to Megan's Law III after Megan's Law III and SORNA were deemed to be unconstitutional[.]" Appellant's Brief at 44. For the following reasons, we are constrained to reverse the PCRA court's denial of relief on this claim, vacate the portion of Appellant's sentence requiring him to comply with Megan's Law III, and remand for an SVP hearing and determination as to Appellant's registration requirements.

In addressing this issue, we review the history of the relevant statutes, which culminated with the current law, SORNA II, 42 Pa.C.S.A. § 9799.51, *et seq*. This Court explained:

> [c]ourts have also referred to SORNA as the Adam Walsh Act. SORNA [I was] the General Assembly's fourth enactment of the law commonly referred to as Megan's Law. Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter. Megan's Law II was enacted on May 10, 2000, in response to Megan's Law I being ruled unconstitutional by our Supreme Court in **Commonwealth v. Williams**, . . . 557 Pa. 285, 733 A.2d 593 ([Pa.] 1999). Our Supreme Court held that some portions of Megan's Law II were unconstitutional in **Commonwealth v. Gomer Williams**, . . . 574 Pa. 487, 832 A.2d 962 ([Pa.] 2003), and the General Assembly responded by enacting Megan's Law III on November 24, 2004. The United States Congress expanded the public notification requirements of

- 15 -

state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16945, and the Pennsylvania General Assembly responded by passing SORNA [I] on December 20, 2011, with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa.C.S. § 9799.10(1). SORNA [I] went into effect a year later on December 20, 2012. Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. [*Commonwealth*] *v. Neiman*, . . . 624 Pa. 53, 84 A.3d 603, 616 ([Pa.] 2013). However, by the time it was struck down, Megan's Law III had been replaced by SORNA [I].

SORNA I also failed to withstand constitutional scrutiny. In [*Muniz*, *supra*], our Supreme Court held that

1) SORNA's registration provisions constitute punishment notwithstanding the General Assembly's identification of the provisions as nonpunitive; 2) retroactive application of SORNA's registration provisions violates the federal *ex post facto* clause; and 3) retroactive application of SORNA's registration provisions also violates the *ex post facto* clause of the Pennsylvania Constitution.

The *Muniz* Court deemed SORNA I's registration provisions to be punitive by applying the seven-factor test established in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Applying *Muniz*, in conjunction with *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), this Court deemed unconstitutional the SVP assessment provision of SORNA I, 42 Pa.C.S. § 9799.24, because "it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." *Commonwealth v. Butler*, 173 A.3d 1212, 1218 (Pa. Super. 2017), [*order reversed*, 226 A.3d 971 (Pa. 2020)]. In direct response to *Muniz* and *Butler*, our General Assembly passed SORNA II, which became effective on June 12, 2018. *See* 42 Pa.C.S. § 9799.51(d)(4) (indicating the "intention of the General Assembly" to "[a]ddress the Pennsylvania Supreme Court's decision in . . . *Muniz*. . ., and the Pennsylvania Superior Court's decision in . . . *Butler*. . . .").

- 16 -

***Commonwealth v. Cosby,*** 224 A.3d 372, 428-29 (Pa. Super. 2019) (some citations omitted), *appeal granted in part*, 236 A.3d 1045 (Pa. Jun. 23, 2020).

SORNA II divides sex offender registration into two categories, depending on the date of the offense.  Through Act 10, as amended in Act 29, the General Assembly created Subchapter I, which pertains to offenders convicted of crimes occurring on or after April 22, 1996, but before SORNA's effective date, December 20, 2012.  ***See*** 42 Pa.C.S.A. §§ 9799.52. Subchapter H addresses offenders convicted of committing crimes on or after December 20, 2012.  ***Id.*** at § 9799.11(c).

On March 6, 2020, the Pennsylvania Supreme Court reversed this Court's decision in ***Butler***, holding that the registration, notification and counseling requirements applicable to SVPs "do not constitute criminal punishment," and therefore SORNA's procedure for designating sex offenders as SVPs [is permissible because it] did not violate the principles set forth in ***Apprendi*** [***v. New Jersey***, 530 U.S. 466 (2013)] or ***Alleyne***."  ***Butler***, 226 A.3d at 993.

On July 21, 2020, our Supreme Court decided ***Commonwealth v. Lacombe***, 234 A.3d 602 (Pa. 2020).  The Court addressed Subchapter I, holding it was "markedly different from the version of SORNA invalidated in ***Muniz***."  ***Lacombe***, 234 A.3d at 606.  Employing the ***Mendoza-Martinez*** factors, the Court concluded "Subchapter I is nonpunitive and does not violate the constitutional prohibitions against *ex post facto* laws."  ***Id.*** at 605-06.

Appellant's resentencing occurred on August 24 - 25, 2017, shortly after the **Muniz** case was decided, but prior to the enactment of SORNA II. Accordingly, the trial court did not find Appellant subject to the registration requirements of SORNA I. N.T., 8/24-25/17, at 161. However, the court determined Appellant was subject to lifetime registration under Megan's Law III. **Id.**

At the time of Appellant's conviction, Megan's Law III applied, and required lifetime registration for an IDSI conviction. **See** 42 Pa.C.S.A. § 9795.1(b)(2)(i) (expired). In **Nieman**, **supra**, our Supreme Court held that Megan's Law III was unconstitutional in its entirety because it was included in a bill that violated the single subject rule. Therefore, at resentencing, Appellant could not be subject to the requirements of Megan's Law III.

However, Appellant is subject to Subchapter I of SORNA II because Subchapter I does not violate the *ex post facto* clause. **Lacombe**, 234 A.3d at 605-06. Thus, Appellant is subject to Subchapter I's registration requirements. While ordinarily we would vacate the portion of Appellant's sentence requiring him to comply with Megan's Law III, and remand for resentencing under Subchapter I, we are unable to do so. As discussed above, the SOAB recommended Appellant be designated an SVP, but a breakdown in the court process ensued, and an SVP hearing never occurred. The Commonwealth concedes this fact, but implies Appellant should be treated as a non-SVP. **See** Commonwealth Brief at 3 n.2, 28-33. We disagree.

Megan's Law III provided:

(a) **Order for assessment.**--After conviction but before sentencing, a court shall order an individual convicted of an offense specified in section 9795.1 (relating to registration) to be assessed by the board. The order for an assessment shall be sent to the administrative officer of the board within ten days of the date of conviction.

(b) **Assessment.**--Upon receipt from the court of an order for an assessment, a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. . . .

* * * *

(e) **Hearing.**—

(1) A hearing to determine whether the individual is a sexually violent predator **shall be scheduled** upon the praecipe filed by the district attorney. The district attorney upon filing a praecipe shall serve a copy of same upon defense counsel together with a copy of the report of the board.

* * * *

(3) At the hearing prior to sentencing the court **shall determine** whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator.

42 Pa.C.S.A. § 9795.4(a), (b), and (e)(1) and (3) (expired) (emphases added).

The record in this case indicates the SOAB assessed Appellant and recommended he be designated an SVP. However, the hearing was not held as scheduled because Appellant requested an independent assessment. N.T.,

- 19 -

6/11/12, at 6-8. It appears from the record that Appellant never followed through with obtaining an independent assessment. This Court has held an Appellant can waive "the sequence in which his sentencing and SVP process" take place. **Commonwealth v. Whanger**, 30 A.3d 1212, 1214 (Pa. Super. 2011). However, the language in Megan's Law III requires a hearing and judicial determination of SVP status. **See** 42 Pa.C.S.A. § 9795.4(e)(1) (expired). Likewise, Subchapter I contains nearly identical language compelling a hearing and determination. 42 Pa.C.S.A. § 9799.58(e). Thus, we reverse the PCRA court's denial of relief on this issue only; we vacate the portion of Appellant's sentence subjecting him to registration requirements of Megan's Law III, and remand for an SVP hearing pursuant to Subchapter I,[7] and disposition as to Appellant's registration requirements under SORNA II.

Order affirmed in part and reversed in part. Judgment of sentence with respect to registration requirements vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[7] The court shall order an updated assessment at its discretion, or at the request of either Appellant and/or the Commonwealth.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/14/2021